Fay JANDREAU and Roberta Jandreau,
Plaintiffs and Appellants,

v.

SHEESLEY PLUMBING & HEATING
COMPANY, INC., and Federal Irriga-
tion, Inc., Defendants and Appellees,

and

Valmont Industries, Inc., Defendant.

No. 13552.

Supreme Court of South Dakota.

Argued Jan. 21, 1982.

Decided Sept. 1, 1982.

Wally Eklund of Johnson, Johnson & Eklund, Gregory, for plaintiffs and appellants.

Gary L. Monserud of Banks & Johnson, Rapid City, for appellee Sheesley Plumbing & Heating Co., Inc.

Jeffrey T. Sveen of Siegel, Barnett & Schutz, Aberdeen, for appellee Federal Irrigation, Inc.

1. Valmont Industries, Inc., reached a settlement with Jandreau and is not a party to this

WOLLMAN, Chief Justice.

This is an appeal by Fay and Roberta Jandreau, husband and wife, from orders granting summary judgment in favor of appellees, Sheesley Plumbing and Heating and Federal Irrigation, Inc.[1] (For convenience, we will refer to appellants as "Jandreau" inasmuch as it was Mr. Jandreau who was the principal actor in the events giving rise to the litigation that resulted in this appeal.) We affirm.

On November 12, 1976, Jandreau signed an order form and sales contract for the purchase of irrigation equipment from Federal Irrigation, an authorized dealer for Valmont products. On February 12, 1977, Jandreau signed a second order form and sales contract that set forth the total purchase price for the equipment, accessories, and installation.

Both sales agreements contain a provision barring any action for breach of contract brought more than one year after the cause of action accrues. The installation of equipment was completed by Sheesley and the system put into operation by Jandreau in June 1977. This action was commenced in March 1980. Appellee Sheesley made no contract with Jandreau, nor did it have any contact with Jandreau until after the contract with Federal was made.

The first issue is whether Jandreau's action against Federal is barred by the one-year limitation contained in the contract. Jandreau argues that the purchase of an irrigation system is a contract for services and not for the sale of goods, rendering inapplicable the provisions of the Uniform Commercial Code, SDCL Title 57A.

Whether a contract is one of sale depends upon whether the contract contemplates a sale of goods. The pertinent definitions are contained in SDCL 57A–2–106(1) and 57A–2–105(1).

SDCL 57A–2–106(1) states:

appeal.

(1) In this chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (§ 57A–2–401). A "present sale" means a sale which is accomplished by the making of the contract.

SDCL 57A–2–105(1) states:

(1) "Goods" means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale other than the money in which the price is to be paid, investment securities (chapter 57A–8) and things in action. "Goods" also includes the unborn young of animals and growing crops and other identified things attached to realty as described in the sections on goods to be severed from realty (§ 57A–2–107).

 The correct result of the application of these definitions is not always self-evident. "Goods" are defined broadly, but special inquiry must be made when goods and services are sold together. When the sale of both goods and services is necessary to meet the contract objectives, then inquiry must be made into the relative importance of the separate elements of the contract. We conclude that the test applied in *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir. 1974), should be applied when making the determination whether a contract is in fact one for the sale of goods rather than the providing of services.

█ *Bonebrake* involved a contract for the sale and installation of used bowling equipment. One of the issues before that court was whether the contract came under Article 2 of the UCC. *Bonebrake* enunciated the following test to be applied in mixed goods and service contracts:

The test for inclusion or exclusion is not whether they are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved (e.g., contract with artist for painting) or is a transaction of sale, with labor incidentally involved (e.g., installation of a water heater in a bathroom)....

499 F.2d at 960 (footnotes omitted).

Regarding the definition of "goods" contained in Article 2, § 105(1) of the UCC the court said:

[T]his section is divided into two parts, the first affirmative, defining the scope and reach of Article 2, the second negative, excluding certain transactions. To come within the affirmative section, the articles (the "things") must be movable, and the movability must occur at the time of identification to the contract. The applicability of the Code to the April contract is clear from and within its four corners. The "things" sold are all items of tangible property, normally in the flow of commerce, portable at the time of the contract. They are not the less "goods" within the definition of the act because service may play a role in their ultimate use. The Code contains no such exception. "Services," ... "always play an important role in the use of goods, whether it is the service of transforming the raw materials into some usable product or the service of distributing the usable product to a point where it can easily be obtained by the consumer. The [SDCL 57A–2–105(1)] definition should not be used to deny Code application simply because an added service is required to inject or apply the product." In short, the fact that the contract "involved substantial amounts of labor" does not remove it from inclusion under the Code ....

499 F.2d at 958–59 (citations and footnotes omitted). After applying these principles, the court concluded that rendering service as part of a contract for sale did not remove the contract from the coverage of the UCC.

The *Bonebrake* analysis has been adopted or applied by numerous courts. See, e.g., *Pittsburgh-Des Moines Steel v. Brookhaven*

*Manor Wat.*, 532 F.2d 572 (7th Cir. 1976); *Ranger Const. Co. v. Dixie Floor Co., Inc.*, 433 F.Supp. 442 (D.S.C. 1977); *Cleveland Lumber Company v. Proctor & Schwartz, Inc.*, 397 F.Supp. 1088 (N.D. Ga. 1975); *Meyers v. Henderson Construction Co.*, 147 N.J.Super. 77, 370 A.2d 547 (1977); *Air Heaters, Inc. v. Johnson Elec., Inc.*, 258 N.W.2d 649 (N.D. 1977); *Burton v. Artery Company, Inc.*, 279 Md. 94, 367 A.2d 935 (1977).

Applying the *Bonebrake* test, then, we examine the contract at issue to determine whether its predominant purpose reasonably stated is the rendition of service, with goods incidentally involved, or is a sale of goods with labor incidentally involved. We look first to the language within the four corners of the sales contract, *Bonebrake*, supra, 499 F.2d at 958, to determine this purpose.[2]

The sales contract, captioned "Order Form and Sales Contract," contains a detailed itemization of the goods to be sold. The pertinent portions of the contract read as follows:

| QUANTITY | LENGTH | SELF PROPELLED IRRIGATION SYSTEM | | | PRICE | TOTAL |
|---|---|---|---|---|---|---|
| | 1,276 ft. 10 Tower | MODEL 4071 DRIVE: Water _____ | GPM 950 Electric | PSI 70 Electric | 30,712.57 | 30,712.57 |

ACCESSORIES

| QUANTITY | PKG. NO. | DESCRIPTION | | |
|---|---|---|---|---|
| 1 | 17AEGSI | Combination: Stop-n-Slot, End Gun Shut-off, 2″ motorized ball valve | 510.00 | 510.00 |
| 1 | 17EG100 | Nelson 100 End Gun | 265.00 | 265.00 |
| 1 | 404 | Running Light | 65.00 | 65.00 |

ACCESSORIES AND SUPPLEMENTAL EQUIPMENT

| | | |
|---|---|---|
| 2 ea. | Perkins Diesels & Berkeley Pumps | 17,400.00 |
| 3,450 ft. | 10″ Steel Pipe above ground | 12,109.50 |
| 4,100 ft. | 10″ Johns-Manville PVC Underground 1.58/pf installed | 15,325.00 |
| 2,000 ft. | Cable Con electrical conduit | 2,000.00 |
| 400 ft. | Steel Stakes and ties | 1,200.00 |
| 1 | Lima Generator (Installed) | 1,500.00 |
| 1 | Intake | 1,000.00 |
| 1 | Solenoid PRSV | 670.00 |
| | Misc. Items (Fuel tank, valves, nuts, bolts, etc.) | 1,474.00 |

ACCESSORIES TOTAL INCLUDES TAX, FREIGHT AND INSTALLATION

| | | |
|---|---|---|
| | OEM Tax 1,033.02 | 52,684.50 |
| | SUB TOTAL | 84,237.07 |
| ~~Installation~~ Installation | | 2,000.00 |
| Sales Tax Pivot Only | | 631.05 |
| Freight | | 500.00 |
| ~~Installation~~ Casualty Insurance | | 4,633.04 |
| Total | | 92,001.16 |
| Less Down Payment | | 13,344.65 |
| Balance Due on Delivery* | | 78,656.51 |

We are satisfied that the predominant purpose of this contract was for the sale of the enumerated items and that the installation of the items that comprised the irriga-

---

**2.** The parties have apparently stipulated that the sales contract dated February 12, 1977, superseded the November 12, 1976, writing.

tion system was secondary to the sale of those items.

In reaching this conclusion, we have not overlooked our decision in *Northern Farm Supply Inc. v. Sprecher,* 307 N.W.2d 870, 874 (S.D. 1981), wherein we held that when supplying goods was "incidental to the main purpose of the contract[,]" the contract in issue was one for the construction of a building rather than for the sale of goods. Although we did not cite *Bonebrake,* our analysis of the elements of the contract yielded the same result that an explicit adoption and application of *Bonebrake* would have.

We turn, then, to the question whether Jandreau's action for breach of express and implied warranties is barred by the one-year limitation provision contained in the contract.

SDCL 57A–2–725(1) provides:

(1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one year but may not extend it.

The sales contract dated February 12, 1977, includes the following paragraph:

STATUTE OF LIMITATION: Any action for the breach of this contract, including warranties arising from it, must be commenced within one year after the cause of action accrues, and all actions shall be barred after such time.

It has been held that the one-year limitation period as allowed by UCC 2–725 is enforceable. *Standard Alliance Ind. v. Black Clawson Co.,* 587 F.2d 813 (6th Cir. 1978).

The question then is whether Jandreau's cause of action accrued more than one year before this lawsuit was commenced. The original contract was entered into between Jandreau and Federal on November 12, 1976. The contract of February 12, 1977, reaffirmed the original agreement, itemized the price list for accessories, but did not alter the one-year limitation period, except to make that provision even more conspicuous.[3] The installation of the irrigation system was begun in February 1977, and Jandreau began to operate the system in June 1977. Jandreau initially experienced problems with the system in the summer of 1977, and continued to complain of problems in the summer of 1978. He alleged in his complaint that a breach occurred in 1977. The last contact between Federal and Jandreau occurred sometime in the fall of 1978, after which Jandreau neither contacted Federal nor attempted to use the system. This lawsuit was commenced in March 1980.

SDCL 57A–2–725(2) provides:

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

■■ When installation is required under a sales contract, tender of delivery occurs not when the goods are physically brought to the site, but rather when installation is complete. *Atlas Industries, Inc. v. National Cash Register Co.,* 216 Kan. 213, 531 P.2d 41 (1975). Jandreau contends that there never was a tender due to deficiencies existing when he started operating the system in June of 1977. The question presented is whether Jandreau's deposition testimony about the deficiencies in the system, the failure of Sheesley to fill and smooth the trench in which the water delivery pipe was laid, and the mechanical failures that allegedly occurred in operating the system

---

**3.** The language in the February agreement is more conspicuous because of the larger type used for the caption "Statute of Limitation." The February contract is also more fully explanatory in that it states "... and all actions shall be barred after such time."

raises any material issue of fact concerning the time of tender.

The leading case is *Standard Alliance Ind. v. Black Clawson Co.,* supra. There, the buyer of an automatic radial forging facility brought a breach of warranty action against its manufacturer. As in this case, the parties had contracted for a one-year limitation on the commencement of any action based on any alleged breach of the agreement. In support of its contention that the time of tender was sometime later than the date of installation, the buyer argued that "tender" of a defective machine is not deemed to take place until the machine runs properly and that tender was therefore not made until the manufacturer ceased its efforts to get the machine to work. In response to this argument, the court stated:

> This argument is plausible, but whithers upon proper examination of the Uniform Commercial Code. UCC § 2–503(1) defines "tender of delivery" as requiring "... that the seller put and hold conforming goods at the buyer's disposition...." Comment 1 to UCC § 2–503 explains that at times "tender" means "due tender" meaning "... an offer coupled with a present ability to fulfill all the conditions resting on the tendering party [which must be] followed by actual performance if the other party shows himself ready to proceed." "At other times [tender] is used to refer to an offer of goods or documents under a contract as if in fulfillment of its conditions even though there is a defect when measured against the contract obligation." *Id.* We think that "tender" as used in UCC § 2–725(2) is the latter and not the former. A contrary interpretation would extend the statute of limitations indefinitely into the future since a defect at the time of delivery would prevent proper "due tender" from taking place until it

was corrected. Under section 2–725, a cause of action accrues upon initial installation of the product regardless whether it functions properly or not so long as the warranty does not extend to future performance. *See Val Decker Packing Co. v. Corn Products Sales Co.,* 411 F.2d 850 (6th Cir. 1969).

587 F.2d at 819.

The Court of Appeals for the Second Circuit, applying New York law, adopted the same principle in *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2nd Cir. 1979). There, the buyer of a computer system brought an action against the seller, Honeywell, to recover damages for the alleged failure of the system to perform. The court held that the warranty and negligence causes of action were time barred on the basis that the system had proved faulty at the time of installation. Thus, the breach had occurred and the cause of action accrued when the installation was completed and the system activated.

■ On the basis of the foregoing authority, Jandreau's contention that tender had not been accomplished more than one year prior to the commencement of this action must be rejected. Even if the time of tender were deemed to have been delayed until the end of 1978, after which time neither Federal nor Sheesley came to the field to adjust or repair the system, Jandreau's action is still time barred. Accordingly, summary judgment was properly entered in favor of Federal.[4]

■ The next issue is whether summary judgment was properly entered in favor of Sheesley. At the outset, we note that Jandreau's testimony established that there was no privity between himself and Sheesley. Sheesley made no representations or warranties to Jandreau, who testified that he had relied solely upon Federal. Jandreau contends, however, that Sheesley

---

4. We agree with appellees that Jandreau's alternative argument—that his claim is one based upon appellees' negligence and therefore not time barred by the one-year limitation contained in the contract—was not raised in the trial court. Accordingly, we will not consider it for the first time on appeal. *Northwestern Eng. v. Thunderbolt Enterprises,* 301 N.W.2d 421 (S.D. 1981); *Chipperfield v. Woessner,* 84 S.D. 13, 166 N.W.2d 727 (1969); *Fales v. Kaupp,* 83 S.D. 487, 161 N.W.2d 855 (1968).

owes obligations as a "seller" independent of any writing.

SDCL 57A–2–103(1)(d) provides that: " 'Seller' means a person who sells or contracts to sell goods." A seller must sell goods, not services, although services may be part of a bargain for goods. Once someone fits the description of seller, then SDCL 57A–2–318 becomes applicable:

A seller's warranty whether express or implied extends to any person who may reasonably be expected to use, consume or be affected by the goods and who is injured by breach of the warranty. A seller may not exclude or limit the operation of this section.

In order to invoke this section against any party, a plaintiff must plead facts sufficient to put a defendant in the category of a seller. Jandreau's complaint states in pertinent part:

[T]hat Sheesley is engaged in the business of engineering, design and installation of irrigation systems and assorted accessories and electrical equipment . . . .

Elsewhere in the complaint Jandreau alleges that Sheesley made warranties regarding design, installation, and construction.[5]

We conclude that these allegations, coupled with Jandreau's deposition testimony, assert only that Sheesley was responsible for the construction and installation of the irrigation system. At most Sheesley was a subcontractor employed by Federal to install the irrigation system and was therefore not responsible for breach of warranties admittedly never made by it. "Where the buyer cannot show reliance on express representations by the remote seller . . . [t]he majority of courts still appear to hold that absent such reliance, a non-privity buyer, whether commercial or consumer, cannot recover for direct economic loss on either an express or an implied warranty theory. . . ." White and Summers, Handbook of the Law Under the Uniform Commercial Code § 11–5, p. 407 (2d ed. 1980) (footnote omitted).

■ Next Jandreau argues that both Sheesley and Federal are estopped from raising the statute of limitation defense due to their efforts to assist him in running the system when problems developed in 1977 and 1978.

Although this court has recognized that there may be situations in which a party may be estopped from raising the defense of the statute of limitations, see *Arbach v. Gruba,* 89 S.D. 322, 232 N.W.2d 842 (1975); *Willadsen v. Crawford,* 75 S.D. 161, 60 N.W.2d 692 (1953), the record in the instant case does not show conduct by Federal or Sheesley that could be construed as intentionally misleading Jandreau into not asserting his legal rights. Appellees by their conduct did not induce Jandreau "to alter his position or do that which he would not otherwise have done, to his prejudice." *Willadsen v. Crawford,* supra, 75 S.D. at 164, 60 N.W.2d at 694. "[A] manufacturer's efforts at repair subsequent to delivery do not extend the contract statute of limitations . . . ." *Triangle Underwriters, Inc. v. Honeywell, Inc.,* supra, 604 F.2d at 745. See also *Standard Alliance Ind. v. Black Clawson Co.,* supra; *Binkley Company v. Teledyne Mid-America Corporation,* 333 F.Supp. 1183 (E.D. Mo. 1971), aff'd 460 F.2d 276 (8th Cir. 1972). We conclude that the application of the doctrine of estoppel is not justified in the circumstances of this case.

■ Jandreau's final contention is that the statute of limitations agreement in the contract excludes or modifies the implied warranties of merchantability and must therefore be in writing and conspicuous pursuant to SDCL 57A–2–316. Jandreau analogizes to *Atlas Industries, Inc. v. National Cash Register Co.,* supra, where the Kansas Supreme Court required a disclaimer limiting liability to six months after delivery to be conspicuous. Jandreau's analogy is faulty, however, in that the effect of a disclaimer limiting liability for a period of time is not to be confused with the effect of

---

**5.** However, in his deposition Jandreau denied that there were any express warranties from Sheesley.

a statute of limitations. See *Welch v. Mitchell*, 351 So.2d 911 (Ala. Civ. App. 1977); *Stan Cross Buick, Inc. v. Concord Auto Auction, Inc.*, 350 Mass. 14, 212 N.E.2d 862 (1965). A statute of limitations neither excludes nor modifies warranties, but only limits the period of time in which an action may be brought. We therefore conclude that Jandreau's contention regarding the applicability of SDCL 57A–2–316 is without merit.

The orders are affirmed.

All the Justices concur.