759 P.2d 71

**FARMERS NATIONAL BANK, Plaintiff,**

v.

**WICKHAM PIPELINE CONSTRUCTION; Edward W. Wickham and Beverly J. Wickham, husband and wife; Scona, Inc.; Darrell L. Cook, G. Brent Stolworthy and G.T. Newcomb, dba CNS, Defendants.**

**WICKHAM PIPELINE CONSTRUCTION; Edward W. Wickham and Beverly J. Wickham, husband and wife, Defendants, cross claimants, appellants,**

v.

**SCONA, INC.; Darrell L. Cook, G. Brent Stolworthy and G.T. Newcomb, dba CNS, Defendants, cross defendants.**

**SCONA, INC.; Darrell L. Cook, G. Brent Stolworthy and G.T. Newcomb, dba CNS, Third party plaintiff-appellants,**

v.

**BEALL PIPE, INC., Third party defendant-respondent.**

No. 17090.

Supreme Court of Idaho.

July 20, 1988.

**566**

Paine, Roy & Nielson, Twin Falls, for appellants. Robert C. Paine (argued).

Cantrill, Skinner, Sullivan & King, Boise, for respondent. Robert D. Lewis (argued).

BAKES, Justice.

Third party plaintiffs, Scona, Inc., and Cook, Newcomb and Stolworthy, doing business as CNS, filed a complaint for indemnification against third party defendant, Beall Pipe, Inc. Upon Beall's motion for summary judgment, the third party complaint was dismissed with prejudice because the statute of limitations under I.C. § 28-2-725 had run. Appellants appeal from the summary judgment order. We affirm.

I

About July 3, 1978, Scona, Inc. (Scona), entered into a contract with the United States for the construction of a certain project known as the "Deep Creek Farm Irrigation Measure."[1] Sixteen days later, Edward W. Wickham and Beverly J. Wickham, doing business as Wickham Pipeline Construction (Wickham), entered into .a subcontract with Scona to perform certain work relative to the primary contract. Certain sums subsequently accrued in favor of Wickham as the result of wcrk performed under the subcontract, but Scona defaulted on the prime contract with the United States and abandoned its work thereunder.

CNS (Cook, Newcomb and Stolworthy) had executed two performance bonds dated July 6, 1978, and July 20, 1978, guaranteeing Scona's performance of its prime contract with the United States. When Scona defaulted on the prime contract, CNS entered into a separate agreement with the United States dated June 5, 1979, by which CNS undertook the completion of the project in place of Scona, including the then existing obligation owing to Wickham.

---

1. *See* Appendix A for a chronological summary of the events forming the basis for this action, discussed *infra.*

In the course of performing these agreements, both Scona and CNS purchased pipe from Beall Pipe, Inc. (Beall), to be used on the construction project. Wickham was to install the pipe. The date of Beall's last delivery was October 25, 1979. Prior to, and at the time of the last pipe delivery, Wickham notified CNS that the pipe was defective and did not meet contract specifications and, as a result, additional costs would be incurred in installing the pipe, entitling Wickham to additional payments. When Wickham and CNS could not immediately agree on a resolution of the problem, Wickham was required to borrow moneys from Farmers National Bank (the bank) for the purpose of paying the additional costs. As security for the loan, CNS (presumably with Wickham's participation) assigned to the bank all the proceeds from the project due and owing Wickham.

Upon completion of the project and distribution of all of the contract funds, Wickham still owed the bank approximately $105,000 on the loan. On November 5, 1981, the bank filed a complaint for the money due on the notes against Wickham, Scona and CNS. On April 27, 1982, Scona and CNS filed an answer to the bank's complaint. One month later, Wickham filed its answer to the bank's complaint, which answer also included a cross claim against Scona and CNS. On August 26, 1982, Scona and CNS filed an answer to Wickham's cross claim.

More than two years later, on September 17, 1984, Scona and CNS filed the instant third party complaint against Beall seeking indemnification in the event Wickham recovered against them pursuant to the cross claim. When the third party complaint was filed, no judgment had been entered on the cross claim, nor had there been any settlement. Beall answered the third party complaint on July 25, 1986, and on June 7, 1987, filed a motion for summary judgment, alleging that the statute of limitations had run on the third party complaint pursuant to I.C. § 28-2-725.[2] A hearing was held and summary judgment was granted for Beall. The district judge held that the I.C. § 28-2-725 4-year statute of limitations governing sales of goods expired on October 25, 1983, and that the instant third party action, which was not filed until September 17, 1984, was thus barred. He then ordered the third party complaint dismissed with prejudice. Appellants appeal from the district court's order.

## II

There is only one issue on appeal. Is I.C. § 28-2-725 the applicable statute of limitations which commenced when Beall allegedly breached the sales contract by supplying non-conforming goods on October 25, 1979, or does some other statute of limitations apply? We hold that I.C. § 28-2-725 is the applicable statute of limitations, and that it commenced to run when Beall allegedly breached its contract for the sale of the pipe on October 25, 1979.

Third party plaintiffs, Scona and CNS, term their complaint as one for indemnification. At the same time, though, they also acknowledge that their action

---

2. **"28-2-725. Statute of limitations in contracts for sale.**—(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year but may not extend it.

"(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

"(3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six (6) months after the termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

"(4) This section does not alter the law on tolling of the statute of limitations nor does it apply to causes of action which have accrued before this act becomes effective."

stems from Beall's breach of the sales contract. Their third party complaint, filed in the district court, stated:

"WHEREFORE, Defendants and Third Party Plaintiffs Scona, Inc., and C.N.S. pray for judgment against Beall in the amount of any judgment recovered by Wickham against them *for defective pipe furnished by Beall*, ...." (Emphasis added.)

Further, in their brief on appeal before this Court, appellants state:

"Thus, the primary issue before this Court is whether the statute of limitations on a claim for indemnification, *arising out of the sale of goods covered by the Uniform Commercial Code*, begins running on the date of the last delivery of the goods ... ?" Brief of Appellants, p. 9 (emphasis added).

Scona and CNS had a contractual relationship with Beall in which Beall agreed to supply them with pipe pursuant to the specifications contained in the primary contract with the United States. If Beall did not deliver pipe meeting the specifications of the contract, a breach of contract action accrued and, upon delivery of the deficient pipe, Scona and CNS had a direct legal cause of action against Beall. I.C. § 28–2–725(2). The damages incurred by Scona and CNS would have been the amount necessary to make the goods conform to the contract specifications, and any damages caused by delay while the goods were made to conform. I.C. §§ 28–2–714, –719. Yet, rather than proceeding on their legal claim when it was ripe, Scona and CNS delayed, asserting now that they are allowed to proceed on an equitable claim for indemnification when they passed up their legal claim.

For over 200 years it has been recognized "that suits in equity shall not be sustained ... in any case where plain, adequate and complete remedy can be had at law." *Parker v. Winnipiseogee Lake Cotton & Woolen Co.*, 67 U.S. (2 Black) 545, 551, 17 L.Ed. 333, 337 (1863), *quoting* Judiciary Act of 1789, § 16. "During the development of the jurisdiction of courts of equity, it came to be recognized that equitable

relief would not be granted if the award of damages at law was adequate to protect the interests of the injured party." Restatement (Second) of Contracts § 359 comment a (1981). Accordingly, there is no need to entertain an equitable cause of action for indemnification when Scona and CNS, *a fortiori*, had a legal cause of action against Beall for breach of contract.

"[R]elief in equity will never be available to secure the same judgment that could be obtained at law. The possibility of equity jurisdiction is present only when the plaintiff seeks some form of relief that he cannot obtain at law. By traditional theory the assertion of equity power in such cases is dependent on the inadequacy of the remedies at law ...." G. Palmer, The Law of Restitution § 4.7 (1978).

On point is *Austin v. North American Forest Products*, 656 F.2d 1076 (5th Cir. 1981). In *Austin* the United States Court of Appeals, Fifth Circuit, held that where a contractor-buyer previously had, under Louisiana law, a legal cause of action against the manufacturer of the product, the contractor-buyer could not maintain an equitable action for indemnification, notwithstanding the fact that the statute of limitations had run on the legal cause of action before it was brought.

Austin (contractor) contracted with the Corps of Engineers for the construction of a housing project. Subsequently, Austin reached an agreement with North American Forest Products and Glassow Sales Co. (sellers) to supply the exterior doors for the housing project. In turn, sellers then ordered the doors from a manufacturer. Upon being notified by the Corps of Engineers that the doors were defective, Austin sought to recover damages from sellers and the manufacturer for breach of warranty in contract for the sale of goods. The court found, however, that the applicable statute of limitations had already run and that Austin's legal remedy was prohibited by the statute of limitations. The court in *Austin* distinguished the Louisiana case of *Minyard v. Curtis Products, Inc.*, 251 La. 624, 205 So.2d 422 (1967), noting that in that case Minyard had no legal

remedy. Consequently, Minyard was allowed to proceed with his action in equity for indemnification. By way of contradistinction, though, the *Austin* court observed that Austin had a remedy at law against the manufacturer, it being an action for breach of warranty in a contract for the sale of goods. The statute of limitations had run on that breach of warranty action, and the Fifth Circuit held that because Austin had had an adequate legal remedy he therefore could not proceed with his equitable action against the manufacturer for indemnification, stating, "[W]hen an adequate remedy at law is available, the court may not resort to principles of equity." 656 F.2d at 1089.

The same situation exists in the instant case. Equity will not afford relief to plaintiffs where they have passed up an adequate remedy at law. *Thomas v. Campbell*, 107 Idaho 398, 690 P.2d 333 (1984); *Suchan v. Rutherford*, 90 Idaho 288, 410 P.2d 434 (1966), *reh'g denied* 1966. Further, "Where an adequate remedy at law has been lost by negligence or lack of diligence, equity will not interfere, since equity is not solicitous for those who sleep on their rights." *American Surety Co. of New York v. Murphy*, 152 Fla. 862, 13 So.2d 442, 443 (Fla.1943), *reh'g denied* 1943. *Cf. Board of County Comm'rs of Routt County v. Colorado Natl. Bank of Denver*, 43 Colo.App. 186, 607 P.2d 1010, 1013 (Colo.Ct.App.1979), *aff'd in part, rev'd in part and remanded on another issue sub nom. Colorado Natl. Bank of Denver v. Board of County Comm'rs of Routt County*, 634 P.2d 32 (Colo.1981) *(en banc)* ("Since Article 5 of the Uniform Commercial Code provides for the relief given ... and fully delineates the rights of the parties, the trial court properly declined to exercise its equitable jurisdiction in lieu of remedies provided for by law.").

Once it has been established that there was a legal breach of contract action available, which thus negates the need for an indemnification action in equity, we need only decide which statute of limitations applies. At least two statutes of limitation are potentially applicable to the breach of contract action; they are I.C. § 28–2–725, providing for a 4–year limitations period,[3] and I.C. § 5–216,[4] providing for a 5–year limitations period. We hold that I.C. § 28–2–725 controls all actions for breach of contract for the sale of goods, including the instant action.

Chapter 2 of the Uniform Commercial Code, as adopted by Idaho, controls the instant action. As I.C. § 28–2–102 states, "Unless the context otherwise requires, this chapter [Chapter 2, Sales] applies to transactions in goods...." The pipe in this case constituted "goods." "'Goods' means all things (including specially manufactured goods) which are movable at the time of identification to the contract for sale...." I.C. § 28–2–105(1). At the time of identification to the instant contract for sale, the pipe was movable and clearly constituted "goods." Thus, under I.C. § 28–2–102, Chapter 2 of Idaho's version of the U.C.C. applies to the instant action. Further, I.C. § 28–2–725 is a specific statute, and I.C. § 5–216 is a more general statute. Under the general rule of statutory construction a more specific statute controls over a more general statute. *Maxwell v. Cumberland Life Ins. Co.*, 113 Idaho 808, 748 P.2d 392 (1987); *Mickelsen v. City of Rexburg*, 101 Idaho 305, 612 P.2d 542 (1980). As the Comments to Official Text, following I.C. § 28–2–725, state: "This Article [Chapter] takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four-year period as the most appropriate...."

---

**3.** See n. 2, *supra*.

**4.** **5–216. Action on written contract.**—Within five (5) years:

"An action upon any contract, obligation or liability founded upon an instrument in writing.

"The limitations prescribed by this section shall never apply to actions in the name or for the benefit of the state and shall never be asserted nor interposed as a defense to any action in the name or for the benefit of the state although such limitations may have become fully operative as a defense prior to the adoption of this amendment."

■ Chapter 2 of the Uniform Commercial Code, as adopted by Idaho, controls the instant action, and Section 725 of that chapter states:

"(1) An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued....

"(2) A cause of action accrues when the breach occurs.... A breach of warranty occurs when tender of delivery is made...."

Applying I.C. § 28–2–725 to the instant facts, the latest date on which the statute might have begun running was October 25, 1979, the date of Beall's last delivery of pipe. Under I.C. § 28–2–725, then, the limitations period closed on October 25, 1983. Scona and CNS, however, did not file their third party complaint against Beall until September 17, 1984, nearly a year after the statute had run. Accordingly, the Scona/CNS action against Beall was time barred at the time of its filing, and the district court correctly so held.

Scona/CNS's claim in this case is similar to that made in *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214 (Utah 1984). The third party plaintiff in *Perry* had subcontracted to furnish doors and millwork on a construction project. Perry ordered the doors from the supplier, Pioneer Wholesale, which then ordered them from the manufacturer. Perry received the doors on December 14, 1974, and stored them for a time before hanging them. On March 27, 1975, the general contractor gave Perry notice of rejection of the doors for defects.

On March 25, 1977, the general contractor originated the action and sued Perry for breach of contract. It was not until February 26, 1980, more than five years after the doors were delivered, that Perry filed his third party complaint alleging that the supplier and the manufacturer had breached their warranties. Perry's only claim for relief stated that in the event he was held liable to the general contractor he should have judgment against the supplier and the manufacturer in the same amount, essentially an indemnification claim.

In *Perry* the trial court decided that the 4–year statute of limitations in Utah Code Ann. § 70A–2–725 (1980) (identical to I.C. § 28–2–725) barred third party plaintiff subcontractor's action against third party defendants, the supplier and the manufacturer. Summary judgment was granted, and the Utah Supreme Court affirmed on appeal. Although Perry argued that his action was for indemnity, not for breach of warranty, the Supreme Court of Utah considered the "undeniable fact" that the lawsuit revolved around the sale of goods. Accordingly, cutting through to the substance of Perry's claim, it held that § 70A–2–725 controls *all* actions for breach of contract for the sale of goods, regardless of how the parties choose to term their cause of action. The Utah court noted that the language of § 70A–2–725 is absolute; in pertinent part, § 70A–2–725 states that, "An action for breach of any contract for sale *must* be commenced within four (4) years after the cause of action has accrued," and that a cause of action for breach of warranty accrues when tender of delivery is made, "*regardless* of the aggrieved party's lack of knowledge of the breach." *Id.*, (emphasis added). The Utah court then concluded:

"A specific statutory limitation period that seeks ultimate repose of causes of action [*i.e.*, UCC § 2–725] will control over a general statute of limitations, *even to cut off an indemnity action that technically has not accrued* [because the indemnitee has not yet been placed in jeopardy by way of judgment or settlement]." 681 P.2d at 218 (emphasis added).

We agree with the Utah Supreme Court. The absolute language of I.C. § 28–2–725 indicates a legislative intent that all actions based on breach of contract for the sale of goods be brought, if at all, within four years of the delivery of the goods. This interpretation is further supported by the statutory provision prohibiting the parties from extending the limitation period by agreement. I.C. § 28–2–725(1). The statute was apparently intended to afford ultimate repose in transactions for the sale of goods. Conversely, application of the gen-

eral indemnity rule (statute of limitations does not begin to run until liability attaches to indemnitee) would contradict the legislature's specific directive, in cases involving the sale of goods, by extending beyond four years the time in which an action may be brought.

We are persuaded that the language of I.C. § 28-2-725 indicates a legislative intent that all actions for breach of contract for the sale of goods are controlled by I.C. § 28-2-725. We therefore hold that the trial court correctly dismissed the Scona/CNS third party complaint against Beall Pipe, Inc.

The judgment of the trial court is affirmed. Costs to respondents. No attorney fees were requested.

SHEPARD, C.J., and BISTLINE, HUNTLEY and JOHNSON, JJ., concur.

### APPENDIX A
#### Farmers Natl. Bank v. Wickham, Timeline

| | |
|---|---|
| Scona contracts with U.S. for Irrigation Project | 7/3/78 |
| CNS gives first performance bond to U.S. | 7/6/78 |
| Wickham subcontracts with Scona | 7/19/78 |
| CNS gives second performance bond | 7/20/78 |
| CNS agrees to complete project in place of Scona | 6/5/79 |
| Beall's last delivery of pipe | 10/25/79 |
| Bank files complaint for money due on notes against Wickham, Scona and CNS | 11/5/81 |
| Scona and CNS file answers | 4/27/82 |
| Wickham answers bank's complaint and cross claims against Scona and CNS | 5/27/82 |
| Scona and CNS answer cross claim | 8/26/82 |
| Scona and CNS file third party complaint against Beall seeking indemnification | 9/17/84 |
| Beall answers third party complaint, alleging affirmative defense of statute of limitations in I.C. § 28-2-725 | 7/25/86 |
| Beall files for summary judgment | 6/8/87 |
| Summary judgment hearing held | 6/22/87 |
| Summary judgment granted on basis of I.C. § 28-2-725 | 7/10/87 |