Harvey D. SHEEHAN and Andrea L. Sheehan, as Trustees (Debtors–in–Possession) of the Chapter 11 Estate of Harvey D. Sheehan and Andrea L. Sheehan, d/b/a J.E.S. Farms, Plaintiffs,

v.

MORRIS IRRIGATION, INC. and Johnson Bros., Company, Defendants and Third–Party Plaintiffs/Appellants.

UNITED PACIFIC INSURANCE CO., Defendant,

v.

TKD, INC., f/k/a Johnston Pump Co., Inc., Third–Party Defendants,

and

Reinke Manufacturing Co., Third–Party Defendant/Appellee.

Nos. 16482, 16491.

Supreme Court of South Dakota.

Argued Sept. 12, 1989.

Decided Aug. 8, 1990.

Mark F. Marshall of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, for defendant and third-party plaintiffs/appellant.

John Simko of Woods, Fuller, Shultz & Smith, Sioux Falls, for third-party defendant/appellee Reinke.

AMUNDSON, Circuit Judge.

Morris Irrigation, Inc. (Morris) appeals from an order granting summary judgment in favor of Reinke Manufacturing Inc., (Reinke) on Morris'[1] third-party action against Reinke. We affirm.

---

1. This is the third appeal in this case. The prior two appeals dealt with the statute of limitation on the performance and payment bonds provided under the terms and conditions of the contracts. *Sheehan v. Morris Irrigation,* 410 N.W.2d 569 (S.D.1987); *Sheehan v. United Pacific Inc., Co.,* 439 N.W.2d 117 (S.D.1989).

Morris is, and was at all times relevant to this appeal, in the business of designing, selling, and installing center pivot irrigation systems in central South Dakota. Morris, along with its joint venturer, Johnson Brothers Company, contracted with Harvey D. Sheehan and Fred Schafer, d/b/a Sheehan and Schafer, a partnership (Sheehan), for the design and construction of an 89 center pivot irrigation system on Sheehan's 12,000 plus acre ranch in Hughes and Sully counties in South Dakota. The contracts were negotiated and executed during the last part of 1979 and early 1980. The parties were represented by counsel in the negotiations, preparation, and signing of the contracts.

Morris was an authorized dealer of Reinke irrigation products. The center pivots were purchased from Reinke's stock and integrated into the irrigation system by Morris. The type of center pivots employed in the Sheehan system were selected by Morris from Reinke's inventory. There were no special design specifications for the center pivots. Sheehan and Reinke executed a separate sales contract for each center pivot. The center pivots and component parts were delivered to the Sheehan project by Reinke and then assembled by Morris.

The Sheehan–Morris contract provided in paragraph 8 that Sheehan would receive the benefit of all manufacturers' warranties covering any components installed into the irrigation system. Morris assigned all such warranties to Sheehan under this same provision.

The irrigation system was placed in operation during the 1980 and 1981 irrigation season. All center pivots were installed in the system by September 26, 1980. A portion of the system had been made operational prior to this date pursuant to the terms of the parties' contract.

As could be expected in a project of this magnitude, numerous problems were encountered in the system's operation. Pat Tracey, who was involved in the project since its inception as either the operator of the system or as farm manager, testified that the end guns on the pivots began plugging up during the 1980 and 1981 growing seasons. He stated that this plugging problem escalated over time and by 1982, fifty percent of the end guns were affected. Sheehan and Morris were both aware of this end gun problem. Sheehan testified that he referred all warranty problems to Morris; however, neither Sheehan nor Morris notified Reinke of the end gun problem prior to the commencement of the lawsuit.

Another problem encountered with the pivots was with alignment. Reinke was notified of the alignment problem in 1981 and replaced some microswitches on the pivots in an attempt to correct the problem. In 1982, Reinke decided to replace all microswitches. This work on the pivots was performed by Reinke pursuant to the warranty given on each center pivot.

Sheehan encountered other problems with the irrigation system including pumping and design inadequacies. These are mentioned to show that the center pivots were not the sole or only reason for Sheehan commencing this action after filing for protection in the bankruptcy court. The trial court granted summary judgment in favor of Reinke on the ground that the contract between Sheehan and Reinke was a contract for the sale of goods and therefore subject to SDCL 57A–2–725(1), the Uniform Commercial Code's statute of limitations in contracts for sale.[2]

2. SDCL 57A–2–725 provides:

    (1) An action for breach of any contract for sale must be commenced within four years after the cause of action has accrued.

    (2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warrant explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

    (3) Where an action commenced within the time limited by subsection (1) is so terminated as to leave available a remedy by another action for the same breach such other action may be commenced after the expiration of the time limited and within six months after the

On appeal Morris contends that its third-party cause of action for indemnity or contribution is not barred by the statute of limitations in SDCL 57A-2-725(1). During the pendency of this appeal, Morris assigned its rights under its third-party claim to Sheehan. Upon notice of the assignment, Reinke filed a motion to dismiss the appeal for various reasons which we concluded were without merit. The parties were allowed to present oral argument to the court. During the argument, counsel for the parties stipulated that this court could review and consider all documents and transcripts of depositions which had been developed during discovery, whether or not the trial court had relied upon them in its consideration of the summary judgment motion.

The established standard of review of the grant or denial of summary judgment is:

> In reviewing a grant or a denial of summary judgment under SDCL 15-6-56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. *Groseth Intern., Inc., v. Tenneco, Inc.*, 410 N.W.2d 159, 164 (S.D.1987). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Wilson v. Great Northern Ry. Co.*, 83 S.D. 207, 212, 157 N.W.2d 19, 21 (1968). The nonmoving party, however, must present specific facts showing that a genuine material issue for trial exists. *Ruane v. Murray*, 380 N.W.2d 362, 364 (S.D.1986). Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper. *Weatherwax v. Hiland Potato Chip Co.*, 372 N.W.2d 118, 120 (S.D.1985); *Ruple v. Weinaug*, 328 N.W.2d 857, 859-60 (S.D.1983).

termination of the first action unless the termination resulted from voluntary discontinuance or from dismissal for failure or neglect to prosecute.

*Pickering v. Pickering*, 434 N.W.2d 758, 760-61 (S.D.1989).

The trial court found that the sale by Reinke was a sale of goods within the meaning of the Uniform Commercial Code. The record discloses that the contract between Sheehan and Reinke was predominantly for the sale of the goods listed on each separate contract. *See, Jandreau v. Sheesley Plumbing & Heating Co.*, 324 N.W.2d 266 (S.D.1982). The parties to this appeal have not argued that this finding by the trial court was in error. As such, the contracts and warranties were covered by the statute of limitations for contracts for sale.

In discussing the purpose of the limitation provisions of a statute similar to SDCL 57A-2-725, the Colorado Supreme Court stated:

> The purpose of the limitation provisions of section 4-2-725 is
>
>> [t]o introduce a uniform statute of limitations for sales contracts, thus eliminating the jurisdictional variations and providing needed relief for concerns doing business on a nationwide scale whose contracts have heretofore been governed by several different periods of limitation depending upon the state in which the transaction occurred.

U.C.C. § 4-2-725, Official Comment. Section 4-2-725 thus 'takes sales contracts out of the general laws limiting the time for commencing contractual actions and selects a four-year period,' which is 'within the normal commercial record-keeping period,' as the most appropriate to modern business practice. *Id.* The intended effect of section 4-2-725, therefore, is to provide sellers with a definite and uniform starting and termination date for possible warranty liability on a contract of sale—the starting date being the date of tender of delivery except where the warranty extends to future performance—even though such rule might be somewhat disadvantageous

(4) This section does not alter the law on tolling of the statute of limitations nor do they apply to causes of action which have accrued before July 1, 1967.

to the buyer because of the buyer's lack of awareness of a breach. *See Dart Industries, Inc., v. Adell Plastics, Inc.,* 517 F.Supp. 9 (S.D.Ind.1980); 5 R. Anderson, Uniform Commercial Code § 2–725:4 (1984).

*Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 176 (Colo.1987).

■ This uniform law, codified at SDCL 57A–2–725, was adopted by the South Dakota Legislature in 1966 and amended in 1982. This is a statute of repose which sets a fixed period after the running of which actions are barred. *Chipperfield v. Woessner,* 84 S.D. 13, 166 N.W.2d 727 (1969). SDCL 57A–2–725 is a statute which is intended to provide for ultimate repose in transactions in the specific area of sales.

■ Morris claims SDCL 57A–2–725 does not apply to an indemnity claim such as the claim filed in the third-party complaint. This court has at no time addressed this issue, and there is a split of authority on the issue in other courts. Indemnity claims have been held to be barred by Uniform Commercial Code § 2–725 (U.C.C. § 2–725) in Georgia, Utah, Illinois and Idaho. *See PPG Industries, Inc. v. Genson,* 135 Ga.App. 248, 217 S.E.2d 479 (1975); *Perry v. Pioneer Wholesale Supply Co.,* 681 P.2d 214 (Utah 1984); *Anixter Bros., Inc. v. Central Steel & Wire,* 123 Ill. App.3d 947, 79 Ill.Dec. 359, 463 N.E.2d 913 (1984); *Farmers Nat. Bank v. Wickham Pipeline,* 114 Idaho 565, 759 P.2d 71 (1988).

In *Farmers Nat. Bank, supra,* the court was considering a summary judgment dismissing a third-party complaint that third-party plaintiff claimed was for indemnification. The court, in holding the specific U.C.C. statutory limitation controlling, held:

> The absolute language of I.C. § 28–2–725 indicates a legislative intent that all actions based on breach of contract for the sale of goods be brought, if at all, within four years of the delivery of the goods. This interpretation is further supported by the statutory provision prohibiting the parties from extending the limitation period by agreement. I.C. § 28–2–725(1)

[Identical to SDCL 57A–2–725(1)]. The statute was apparently intended to afford ultimate repose in transactions for the sale of goods. Conversely, application of the general indemnity rule (statute of limitations does not begin to run until liability attaches to indemnitee) would contradict the legislature's specific directive, in cases involving the sale of goods, by extending beyond four years the time in which an action may be brought.

*Farmers Nat. Bank, supra,* 759 P.2d at 76–77.

In *Farmers Nat. Bank,* the third-party plaintiff filed a claim for indemnification on an irrigation project. The third-party plaintiff had purchased pipes from the third-party defendant which were defective and did not meet contract specifications at time of delivery. The third-party claim was not filed within four years as required by I.C. § 28–2–725. The court, under the facts existing in that case, held in accordance with the strict application view of U.C.C. § 2–725 in order to avoid unending litigation.

Jurisdictions which have held that indemnity claims are not governed by U.C.C. § 2–725 are Maryland, New Hampshire, Missouri, Maine, North Carolina, New York and Nebraska. *See McDermott v. City of New York,* 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980); *Walker Mfg. Co. v. Dickerson, Inc.,* 619 F.2d 305 (4th Cir.1980) (applying North Carolina law); *Cyr v. Michaud,* 454 A.2d 1376 (Me.1983); *City of Clayton v. Grumman Emer. Prod.,* 576 F.Supp. 1122 (E.D.Mo.1983) (applying Missouri law); *Jaswell Drill Corp. v. General Motors,* 129 N.H. 341, 529 A.2d 875 (1987); *Hanscome v. Perry,* 75 Md. App. 605, 542 A.2d 421 (1988); *Wood River v. Geer–Melkus Const. Co.,* 233 Neb. 179, 444 N.W.2d 305 (1989).

In the *Wood River* case, the Nebraska Supreme Court reversed the trial court's dismissal of the third-party complaint on the grounds that the indemnity claim was barred by the Uniform Commercial Code's four year statute of limitations. In that case, the third-party defendant manufac-

tured and supplied to the third-party plaintiff the rotating media aeration system installed in a waste water treatment facility. After the media system was built to specifications and delivered to the contractor, many repairs were made by the manufacturer and supplier in the following years. The media system finally broke down completely after the four year U.C.C. statute of limitations had run. The failure of the equipment supplied by the third-party defendant was the sole cause of the damages sustained by third-party plaintiff.

The *Wood River* court, in reversing the trial court, held:

> These jurisdictions [Maryland, New Hampshire, Missouri, Maine, North Carolina, New York] follow the reasoning advanced by the New York Court of Appeals in *McDermott v. City of N.Y., supra,* 50 N.Y.2d at 216–17, 406 N.E.2d at 462, 428 N.Y.S.2d at 646:
>
> > Conceptually, implied indemnity finds its roots in principles of equity. It is nothing short of simple fairness to recognize that '[a] person who, in whole or in part, has discharged a duty which is owed by him but which as between himself and another should have been discharged by the other, is entitled to indemnity' (Restatement, Restitution § 76). To prevent unjust enrichment, courts have assumed the duty placing the obligation where in equity it belongs. [citations omitted].

*Wood River, supra,* 444 N.W.2d at 310. The court concluded that this case was a classic example of the inequity which would result from applying U.C.C. § 2–725 to the transaction.

In South Dakota, indemnity is an "all-or-nothing" proposition. *Ebert v. Fort Pierre Moose Lodge No. 1813,* 312 N.W.2d 119 (S.D.1981). The party seeking indemnity has to show an absence of proportionate fault so that the entire liability can be shifted. In this instance, Morris and Sheehan were both aware of the alleged end

gun problems shortly after the system was operational and were aware of the alleged continued escalation of the problem during the warranty period. Reinke's replacement of the microswitches under warranty is evidence that Morris and Sheehan were both familiar with the warranty provisions of their contracts. The record is clear that no notice of a claim of breach of warranty on the end guns was tendered to Reinke until the commencement of this lawsuit after Sheehan went into bankruptcy.

This case does not present a classic example of inequitable results when SDCL 57A–2–725's statute of limitations for sales is applied. A party seeking indemnity must be free of wrongdoing, which is not the case here. Morris and/or Sheehan had ample opportunity to exercise their contract rights to correct any warranty problems encountered with the pivots. They chose not to do this until after the limitations period had run, and they have failed to show that all problems were directly attributable to Reinke as was shown in the *Wood River* case, *supra.* The record in this case does not reflect a party or parties that proceeded diligently and promptly once they became aware of equipment that was allegedly not operating as warranted.

■ Morris also argues that SDCL 57A–2–275 is unconstitutional under Art. VI, § 20 of the South Dakota Constitution.[3] This is commonly referred to as the "open courts" provision in our state constitution. In *Daugaard v. Baltic Co-op Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984), this court held two statutes of limitations unconstitutional under the open courts provision.

In *Daugaard, supra,* the facts involved an explosion caused by defective underground gasoline lines. This court held that SDCL 15–2–9 and SDCL 15–2–12.1 violated Art. VI, § 20 of the South Dakota Constitution. This court held that the statutes foreclosed the right to bring an action before it accrued or before the parties were

---

3. Art. VI, § 20 of the South Dakota Constitution provides:

> All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.

aware that there was a claim for negligence in the installation of the gasoline lines.

In this case, Morris and Sheehan were aware that warranty problems existed long before the statute of limitations ran. For some reason, they elected not to proceed to enforce the warranty or sue on the warranty. There are no allegations in this action of warranty breaches which were covered up or of any hidden defects that Morris or Sheehan discovered after the statute of limitations ran.

We therefore hold that, in this case, the trial court, although not so stating, correctly applied the strict application view of SDCL 57A-2-725, and we further find the statute to be constitutional.

The order granting summary judgment is affirmed.

MORGAN, J., and GERKEN, Circuit Judge, concur.

TAPKEN, Circuit Judge, concurs in part and dissents in part.

SABERS, J., dissents.

AMUNDSON, Circuit Judge, for WUEST, C.J., disqualified.

GERKEN, Circuit Judge, for HENDERSON, J., disqualified.

TAPKEN, Circuit Judge, for MILLER, J., disqualified.

TAPKEN, Circuit Judge, concurring in part and dissenting in part.

I concur with the dissent expressed by Justice Sabers except I do not find SDCL 57A-2-725 unconstitutional. Simply stated, SDCL 57A-2-725 is not applicable to a party seeking indemnification. *Wood River v. Geer–Melkus Const. Co.*, 233 Neb. 179, 444 N.W.2d 305 (1989).

SABERS, Justice (dissenting).

I dissent. A cause of action based on indemnity should be controlled by a statute

of limitations based on indemnity—not on a statute of limitations based on a sale.

The majority thoroughly sets forth the opposing views as to whether the statute of limitations found in § 2-725 of the Uniform Commercial Code should apply to an indemnity claim. The majority then adopts the position that it should apply, but does so without any explanation as to why that position is preferable. In fact, the better position is that the § 2-725 limitation should not apply to an indemnity claim.

The right to indemnification arises when a person discharges a liability that equitably should have been discharged by another. *Ebert v. Fort Pierre Moose Lodge #1813*, 312 N.W.2d 119 (S.D.1981). An action for indemnification is based upon a contract, express or implied, that the person who should have discharged the liability will reimburse or indemnify the one who did. *See McDermott v. City of New York*, 50 N.Y.2d 211, 428 N.Y.S.2d 643, 406 N.E.2d 460 (1980). Such an indemnity claim is a separate cause of action, independent of the underlying liability. *Id.* As the court explained in *McDermott:* "The cause of action for indemnification interposed against the manufacturer of an allegedly defective product is independent of the underlying wrong...." *Id.*, 50 N.Y.2d at 215, 428 N.Y.S.2d at 644, 406 N.E.2d at 461. Accordingly, an indemnification action should be governed by the six-year limitation applicable to an action upon a contract. SDCL 15-2-13(1). SDCL 57A-2-725, on the other hand, governs "[a]n action for breach of any contract for sale." Since an indemnity action does not involve a contract for sale, it is inappropriate to apply SDCL 57A-2-725 to such an action.

Not only is it inappropriate to apply SDCL 57A-2-725 to this case, it is unconstitutional. Article VI, § 20 of the South Dakota Constitution guarantees a right of access to the courts of this state for resolution of a common law or statutory cause of action.* We have previously ruled that

---

* South Dakota Constitution Article VI, § 20 provides:

    All courts shall be open, and every man for an injury done him in his property, person or reputation, shall have remedy by due course of law, and right and justice, administered without denial or delay.

under this constitutional guarantee a statute of limitations may not prevent a cause of action before it accrues. *Daugaard v. Baltic Co-op Bldg. Supply Ass'n,* 349 N.W.2d 419 (S.D.1984). As Justice Henderson explained in *Daugaard:*

> How can a plaintiff be prevented from bringing a cause of action due to the passage of time prior to that action accruing? ... [T]he answer to this query is that it cannot, not without violating basic constitutional guarantees. Death cannot occur without there first being conception, nor dusk come without daylight. Neither can a cause of action expire before it accrues.

*Id.* at 425 (quoting *McMacken v. State,* 320 N.W.2d 131, 141 (S.D.1982) (Henderson, J., dissenting), *aff'd on rehearing,* 325 N.W.2d 60 (S.D.1982)).

Applying SDCL 57A-2-725 to Morris' indemnity claim would result in preventing the cause of action before it accrues. Obviously, a cause of action may not be commenced before it accrues, *see* SDCL 15-2-1, and an indemnity action does not accrue until the party seeking indemnification suffers loss or damage. *Wood River v. Geer-Melkus Constr. Co.,* 233 Neb. 179, 444 N.W.2d 305 (1982); *accord McDermott; Beck v. Westphal,* 141 Mich.App. 136, 366 N.W.2d 217 (1984). The earliest the party seeking indemnification could suffer loss or damage would be the commencement of a claim against him for the underlying liability. In this case, a claim against Morris was not commenced until April 1986, over a year past the deadline SDCL 57A-2-725 would impose. In other words, if SDCL 57A-2-725 is applied to Morris' indemnity claim, the time for bringing the action expired before the cause of action accrued. Simply put, Morris is prevented from seeking a remedy for the alleged injury. Article VI, § 20 prohibits such a result.

The majority suggests that Morris is not denied a remedy because it was aware of the warranty problems before the end of the SDCL 57A-2-725 limitation period. However, that would only allow Morris to bring an action on the warranty, not an action for indemnity. Morris is not seeking to recover for a breach of warranty, but instead is seeking to be indemnified for a liability that it claims should equitably fall on Reinke. The indemnity action could not be brought by Morris until Sheehan instituted its action against Morris.

The majority also suggests that Morris is not entitled to be indemnified because it is not free from fault, and a party seeking indemnity must be free of fault. While the majority is correct that a party seeking indemnity must show it is free of fault, the majority misunderstands the type of fault that must be absent from the would-be indemnitee. The majority says Morris is not free from fault because it knew about the problems before the end of the warranty action limitation period, yet chose not to enforce their warranty rights. This is wrong. The relevant fault in an indemnity action is the fault in causing the problems with the product. *See Wood River.* The claimed defects include the paint on the interior of the pipes allegedly improper for submersible conditions causing it to flake off in large chunks and clog the end guns of the pivots. This is claimed to be solely the manufacturer's responsibility (Reinke Manufacturing). Moreover, whether a particular would-be indemnitee is free from fault has nothing to do with the general question of what statute of limitations shall apply to the cause of action. The presence or absence of fault is a fact question for the finder of fact.

The majority's holding also conflicts with our recent decision in *Morgan v. Baldwin,* 450 N.W.2d 783 (S.D.1990). That decision unanimously held that, where pleadings intertwined contract and medical malpractice causes of action, the longer (six-year) contract statute of limitations controlled both the contract cause of action and the legal malpractice cause of action, even though the three-year statute of limitations would have otherwise barred the legal malpractice claim. Should we have one rule which *prevents* indemnity claims against manufacturers even though within the statute of limitations and another entirely inconsistent rule which *permits* claims against lawyers even though otherwise barred by the statute of limitations?

We should reverse and remand for trial consistent with this writing.

