CITY OF WOOD RIVER, NEBRASKA, A MUNICIPAL CORPORATION, APPELLEE, V. GEER-MELKUS CONSTRUCTION COMPANY, INC., ET AL., DEFENDANTS AND THIRD-PARTY PLAINTIFFS, APPELLANTS AND CROSS-APPELLEES, GEO. A. HORMEL & COMPANY, A CORPORATION, THIRD-PARTY DEFENDANT, APPELLEE AND CROSS-APPELLANT.

444 N.W.2d 305

Filed August 11, 1989.   No. 87-559.

John A. Wolf, of Shamberg, Wolf & Bush, for appellants.

Richard L. Spangler, Jr., of Woods, Aitken, Smith, Greer, Overcash & Spangler, for appellee Hormel.

William A. Francis, of Cunningham, Blackburn, Livingston, Francis, Cote, Brock & Cunningham, and O. Wm. VonSeggern, of Grimminger & VonSeggern, for appellee City.

BOSLAUGH, WHITE, SHANAHAN, and FAHRNBRUCH, JJ., and WITTHOFF, D.J.

WITTHOFF, D.J.

This is an appeal from an order of the Hall County District Court finding the third-party action of Geer-Melkus Construction Company, Inc., and United States Fidelity & Guarantee Company (Geer-Melkus) against Geo. A. Hormel & Company (Hormel) was barred by the statute of limitations.

## FACTS

Appellant Geer-Melkus contracted with the City of Wood

River to construct a waste water treatment facility. Appellee Hormel manufactured and supplied the rotating media aeration system for the facility. The media system was delivered on or about September 14, 1976, and the plant became operational in the summer of 1977. In the following years, many repairs were made to the media system, and in December 1982 the system broke down completely and could not be repaired.

Wood River filed an action for breach of contract against Geer-Melkus on July 6, 1981. With the court's consent, on December 22, 1981, Geer-Melkus filed a third-party complaint against Hormel, alleging that if it was found liable to Wood River, Hormel was liable to it for breach of warranty.

Specifically, Geer-Melkus complained (1) Hormel warranted the rotating media aeration system would, without further modification, provide a minimum of 22,000 square feet of biological support media in each of the first two stages and 33,000 square feet in the final two stages, for a total of 110,000 square feet of biological support media; (2) Geer-Melkus installed the waste water treatment facility in exact accordance with the plans and specifications; (3) the waste water treatment facility was made operational on or about July 27, 1977; (4) the media rotary disk unit deteriorated and shifted on its shaft; (5) the deterioration and shifting subsequently caused damage to the bearings of the shaft and the shaft itself; (6) the shifting and deterioration required Wood River to replace portions of the waste water treatment system; and (7) the deterioration and shifting were contrary to the specifications for the fixed media rotating disk unit. Geer-Melkus attached, and incorporated by reference, a copy of Wood River's petition as an exhibit to their third-party complaint, and alleged that

> if the allegations of the Plaintiff's Petition are found to be true and if the Plaintiff recovers a judgment against the Defendants and Third Party Plaintiffs, the Third Party Defendant would be liable to the Defendants and Third Party Plaintiffs for the entire amount of the Plaintiffs [sic] claim against them for the reason that said allegations constitute a breach of the Third Party Defendant's express warranty set forth in paragraph 8 hereof.

On February 12, 1982, Hormel filed a demurrer, based primarily upon the statute of limitations defense, which the court overruled. Hormel filed an answer to the third-party complaint on March 5, 1982, admitting it manufactured and supplied the rotating system and stating the system was delivered on February 12, 1978. Hormel raised as affirmative defenses that (1) the action was barred by the statute of limitations; (2) the amount of the claim exceeded the coverage of the warranty; (3) Wood River failed to properly operate and maintain the system; (4) Hormel was not notified of the alleged breach of warranty; and (5) the warranty expired on February 12, 1978. Geer-Melkus filed a reply, alleging the statute of limitations had not run because they were asking for indemnity.

Hormel then moved for summary judgment, once again asserting the statute of limitations. The motion for summary judgment was overruled.

On November 12, 1985, a separate trial was held on the issue of the statute of limitations. At trial, Hormel demurred ore tenus, which demurrer the court also overruled. At the conclusion of this trial, the judge ruled the statute of limitations was tolled because of repairs and replacements made by Hormel.

Trial on the merits was held on October 28, 1986. The court found for Wood River and against Geer-Melkus in the amount of $57,379.54 on the original petition. On the third-party petition, the court found for Hormel and against Geer-Melkus, holding that the third-party action was barred by the statute of limitations. Pursuant to statute, the court allowed attorney fees of $19,000 to Wood River against Geer-Melkus. Geer-Melkus appeals the court's ruling on their third-party complaint, and Hormel cross-appeals the earlier failures to dismiss the action.

## ASSIGNMENTS OF ERROR ON APPEAL

Geer-Melkus assigns as error (1) the trial court's failure to direct a verdict in favor of Geer-Melkus and against Hormel at the close of the evidence; (2) the trial court's entry of judgment generally in favor of Hormel and against Geer-Melkus; (3) the trial court's failure to enter judgment against Hormel on the theory of indemnity; (4) the trial court's finding, after the trial

on the merits, that Geer-Melkus' claim was barred by Neb. U.C.C. § 2-725 (Reissue 1980), and reversing its previous finding in favor of Geer-Melkus following a separate trial on the issue of the statute of limitations; and (5) the trial court's failure to determine Neb. Rev. Stat. § 25-224(3) (Reissue 1985) applied to Geer-Melkus' claim.

On cross-appeal, Hormel claims the trial court erred (1) in overruling Hormel's demurrer and (2) in denying Hormel's demurrer ore tenus and admitting evidence at trial on the nature of the statute of limitations issue, over Hormel's objection.

## LOSS OF JURISDICTION BY THE
## DISTRICT COURT TO MODIFY ITS OWN ORDERS

The term of court ended after the trial on the statute of limitations and the court's ruling against Hormel. Geer-Melkus claims the court was therefore without authority to modify this ruling after the trial on the merits.

This court has previously stated that a Neb. Rev. Stat. § 25-221 (Reissue 1985) statute of limitations determination is an interlocutory order which is not subject to appeal. *Wulf v. Farm Bureau Ins. Co.*, 188 Neb. 258, 196 N.W.2d 164 (1972).

*Wulf* dealt with an appeal from a § 25-221 statute of limitations decision prior to the resolution of the remaining issues. The appellee moved to dismiss the appeal based on the fact that a final judgment or determination of the case had not been entered. The motion was sustained.

> [I]t seems clear that section 25-221, R.S. Supp., 1971, intends that an order entered denying relief on a plea of the statute of limitations is to be treated as an interlocutory order and that any error in the ruling made may be presented in an appeal taken after final disposition of the case. It is in the same relative position as is faced when the court overrules a demurrer, a plea in abatement, a motion to amend, or a motion to dismiss.

*Id.* at 260, 196 N.W.2d at 165-66.

The special bifurcation of the trial does not create a separate judgment when the trial court determines the action is not barred by the statute of limitations. Nebraska law generally does not distinguish between types of interlocutory orders for

purposes of appeal or jurisdiction.

> In *Huffman v. Rhodes,* 72 Neb. 57 [100 N.W. 159 (1906)], it was held that an interlocutory order may be vacated at a subsequent term by the same court, without compliance with the provisions of section 602 of the code [Ann. Stat. §§ 1612 et seq. (1903)]. No special procedure therefor is required on the part of the trial court in dealing with such orders, and unless an abuse of discretion is shown the reviewing court will not interfere . . . .

*Godfrey v. Cunningham*, 77 Neb. 462, 465, 109 N.W. 765, 766 (1906). The statutes at issue in *Godfrey* deal with procedures for appeal and vacation of judgments. There was no motion before the trial court at the end of the term, and the issue of the modification of the interlocutory order was raised entirely in the subsequent term. The result in *Godfrey* is consistent with the inherent power of the court to control its own proceedings and the policy favoring appeal only at the end of all lower court proceedings. Further, this court has stated: "No court is required to persist in error, and, if he concludes that a former ruling was wrong, he may correct it at any time while the case is still in his control." *Tady v. Warta*, 111 Neb. 521, 526, 196 N.W. 901, 903 (1924).

In conclusion, the district court had jurisdiction to modify its earlier orders on the statute of limitations issue.

### ISSUE OF INDEMNITY RAISED BY THE PLEADINGS

Before we can determine whether the statute of limitations bars Geer-Melkus' third-party claim, we must determine whether Geer-Melkus seeks damages on a breach of warranty or seeks indemnification. Geer-Melkus does not specifically ask for "indemnity," but, instead, asks for damages for breach of warranty. The third-party complaint specifically set forth the problems with the "rotating media aeration system" manufactured by Hormel. It incorporated Wood River's petition and all its allegations. Finally, the third-party complaint alleged that if Wood River recovered a judgment against Geer-Melkus, Hormel would be liable to Geer-Melkus for the entire amount of Wood River's claim because of the expressed warranty.

While the term "indemnity" is not specifically used,

> [t]he essential character of a cause of action or the remedy or relief it seeks, as shown by the allegations of the complaint, determines whether a particular action is one at law or in equity, unaffected by conclusions of the pleader or what the pleader calls it, or the prayer for relief.

*Waite v. Samson Dev. Co.*, 217 Neb. 403, 408, 348 N.W.2d 883, 887 (1984); *Brchan v. The Crete Mills*, 155 Neb. 505, 52 N.W.2d 333 (1952).

Even if the pleading mistakenly identifies a cause of action, the right to recover under the facts alleged is not affected.

> In order to decide the form of the redress, whether contract or tort, it is necessary to know the source or origin of the duty or the nature of the grievance. Attention must be given to the cause of the complaint; in other words, the character of the action must be determined from what is asserted concerning it in the petition in the cause. It is not important what the plaintiff calls his action. If he does attempt to identify it and is mistaken, that is immaterial. This is the rationale of the code provision that a petition is a statement of facts constituting a cause of action in ordinary and concise language.

*Fuchs v. Parsons Constr. Co.*, 166 Neb. 188, 192, 88 N.W.2d 648, 651 (1958).

It is evident from the pleadings Geer-Melkus claims that (1) appellant Geer-Melkus purchased the rotary system from Hormel; (2) Hormel manufactured the same to meet certain specifications; (3) the system did not meet those specifications; and (4) if Geer-Melkus suffered damages because of the failure of Hormel to fulfill its contractual obligation, they would look to Hormel for payment of their loss. The third-party complaint sets out specifically what Hormel's aeration system did wrong. A duty to indemnify will always arise out of another more basic obligation whether it arises on contract or tort. Although Utah chose to bring sales indemnification actions within § 2-725 of the Uniform Commercial Code, the Utah Supreme Court identified an allegation of a breach of warranty as raising the issue of indemnification.

Perry argues that [§ 2-725] does not apply because his action is in reality one for indemnity, not one for breach of warranty. We consider this argument in the context of the undeniable fact that the subject matter of this entire lawsuit is the sale of goods, which will be governed where applicable by the Utah version of the Uniform Commercial Code. . . . *The underlying action was for breach of contract, and the amended third-party complaint alleges only a cause of action for breach of warranty. It nowhere mentions indemnity. Nonetheless, we look to the substance of Perry's claim, regardless of what he chose to call it.*

(Emphasis supplied.) *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 217 (Utah 1984).

Hormel cannot claim that it did not understand the theory upon which the third-party complaint was predicated or that it had no warning in time to defend itself. The motion for leave to file a third-party complaint against Hormel specifically stated that "a rotating media aeration system manufactured by George A. Hormel & Co. was defective and was not merchantable and if such allegations are true these Defendants would be entitled to indemnification from George A. Hormel & Co."

In addition thereto, the reply filed by Geer-Melkus specifically addressed § 2-725 and alleged that it did not apply

for the reason that under the substantive law of the State of Nebraska the periods of limitation set forth in the foregoing statutes, if applicable in the instant case, do not start to run upon a claim for indemnity until such time as the indemnitee's liability has been fixed and discharged.

Therefore, the third-party complaint raised an indemnification cause of action.

## APPLICABILITY OF § 2-725 TO INDEMNIFICATION CAUSES OF ACTION

All parties agree the sale which is the subject matter of the third-party complaint is a sale of goods within the meaning of the Uniform Commercial Code. As such, the original contract and warranty were covered by the statute of limitations of

contracts for sale.

In examining the statute and the proposed scope of the statute, it should be noted that any action for breach of contract must be commenced within 4 years after the cause of action has accrued. The statute further specifically defines accrual of a cause of action by saying that the breach occurs when a tender of delivery is made, except where a warranty specifically extends to future performance of the goods, and discovery of the breach must await time of such performance. In this case the warranty did not specifically extend to future performance.

We have not previously addressed the question of whether the limitation set out in § 2-725 applies to an indemnity claim. Other jurisdictions have split on the issue.

Georgia, Utah, Illinois, and Idaho have held indemnity claims are controlled and limited by § 2-725. *PPG Industries v. Genson*, 135 Ga. App. 248, 217 S.E.2d 479 (1975); *Perry v. Pioneer Wholesale Supply Co., supra; Anixter Bros, Inc. v. Cen. Steel & Wire*, 123 Ill. App. 3d 947, 463 N.E.2d 913 (1984); *Farmers Nat. Bank v. Wickham Pipeline*, 114 Idaho 565, 759 P.2d 71 (1988). These jurisdictions view the strict application of § 2-725 as necessary to avoid the problem of unending litigation.

> The four-year statute applicable to the indemnity theory does not apply in this case because a sale of goods occurred in 1974 with observable defects (if any), and any cause of action against Third-Party Defendants arose at that time. Otherwise, anyone buying defective goods could resell them before or after the statute had run, and upon being sued for the original defects, file a third-party complaint for indemnity and thus defeat the policy of repose underlying the statute of limitation.

*Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 217 n.1 (Utah 1984).

Maryland, New Hampshire, Missouri, Maine, North Carolina, and New York have ruled indemnity claims do not come under the time limitation found in § 2-725. *McDermott v. City of N. Y.*, 50 N.Y.2d 211, 406 N.E.2d 460, 428 N.Y.S.2d 643 (1980); *Walker Mfg. Co. v. Dickerson, Inc.*, 619 F.2d 305 (4th Cir. 1980) (applying North Carolina law); *Cyr v. Michaud*, 454

A.2d 1376 (Me. 1983); *City of Clayton v. Grumman Emer.
Prod.*, 576 F. Supp. 1122 (E.D. Mo. 1983) (applying Missouri
law); *Jaswell Drill Corp. v. General Motors Corp.*, 129 N.H.
341, 529 A.2d 875 (1987); *Hanscome v. Perry*, 75 Md. App.
605, 542 A.2d 421 (1988). These jurisdictions follow the
reasoning advanced by the New York Court of Appeals in
*McDermott v. City of N. Y., supra* at 216-17, 406 N.E.2d at 462,
428 N.Y.S.2d at 646:

> Conceptually, implied indemnity finds its roots in the
> principles of equity. It is nothing short of simple fairness
> to recognize that "[a] person who, in whole or in part, has
> discharged a duty which is owed by him but which as
> between himself and another should have been discharged
> by the other, is entitled to indemnity" (Restatement,
> Restitution, § 76). To prevent unjust enrichment, courts
> have assumed the duty of placing the obligation where in
> equity it belongs (see, e.g., *Dunn v. Uvalde Asphalt
> Paving Co.*, 175 NY 214, 217-218; *Oceanic S. N. Co. v.
> Compania Transatlantica Espanola*, 134 NY 461, 465-468
> . . .).

In deciding the statute of limitations question was governed
by the indemnity rule rather than the contract or warranty rule,
the Maryland Court of Special Appeals stated:

> In approaching this issue, both sides have focused their
> attention on when limitations begins to run in an action
> for indemnification and have given but scant
> consideration to the nature of the indemnity claim actually
> made by appellant. As to the limitations question, we
> think that appellant is correct in her view that an action for
> indemnification accrues and the limitations period
> commences not at the time of the underlying transaction
> but when the would-be indemnitee pays the judgment
> arising from the underlying transaction. That seems to be
> the majority view, and it is certainly in keeping with the
> nature of an indemnity action.

(Citations omitted.) *Hanscome v. Perry, supra* at 614, 542 A.2d
at 425.

In applying the Missouri rule, the U.S. District Court used
the same rationale. In *City of Clayton v. Grumman Emer.*

*Prod., supra,* the issue was which party was financially responsible for cracks in a firetruck frame. The firetruck was purchased by the city from Howe Fire Apparatus Co., Inc., which was subsequently merged into Grumman Emergency Products, Inc. The frame was manufactured by The Warner and Swayse Company. Clayton sued Grumman as the successor in interest to Howe, which brought in Warner and Swayse as third-party defendants. Warner and Swayse responded by pleading the statute of limitations.

> Although Grumman raises the issue of the future performance exception to § 2-725, the Court need not address that question. Counts I and III of Grumman's third-party complaint state causes of action for indemnity based on breaches of express and implied warranties. The statute of limitations for indemnity does not start to run until the indemnitee is found liable to a third party. *See Simon v. Kansas City Rug Co.,* 460 S.W.2d 596, 600 (Mo.1970). Therefore, Grumman's claims for indemnity from Warner are not time barred. This result does not imprudently enlarge the statute of limitations for breach of warranty. A party who buys and then resells a product is not in a position to discover the latent defect within the warranty's limitation period because the product is in the hands of the consumer during that time. Only when the consumer sues the retailer does the retailer gain notice of the latent defect. *See Walker Manufacturing Co. v. Dickerson, Inc.,* 619 F.2d 305, 310 (4th Cir.1980) (North Carolina U.C.C. law).

*City of Clayton, supra* at 1127.

Nebraska has long held a claim for indemnity accrues at the time the indemnity claimant suffers loss or damage. *City of Lincoln v. First Nat. Bank of Lincoln,* 67 Neb. 401, 93 N.W. 698 (1903).

In *Waldinger Co. v. P & Z Co., Inc.,* 414 F. Supp. 59 (D. Neb. 1976), the trial court held the underlying statute of limitations dealing with political subdivision tort claims did not apply to actions seeking contribution or indemnification. Waldinger Co. instituted an action on January 16, 1976, against P & Z, Metropolitan Utilities District of Omaha, and the City of

Omaha, alleging negligence proximately resulting in the collapse of a slurry trench wall which surrounded the Omaha-Douglas Civic Center. On May 3, 1976, the City of Omaha filed a third-party complaint against Hawkins Construction Company, Leo A. Daly Company, and Omaha-Douglas Public Commission for indemnification or contribution. Thereafter, the commission moved to dismiss the third-party complaint for failure to file a tort claim pursuant to the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. § 23-2401 et seq. (Reissue 1974). The commission argued that any claims not filed within 1 year of the injury were extinguished.

In interpreting Nebraska law on contribution and indemnity, the trial court held:

> These decisions are based on sound equitable principles. Contribution and indemnification are inchoate rights which do not arise until one tort feasor has paid more than his share of the damages or judgment. A plaintiff may sue one tort feasor or he may join all tort feasors in one suit. He may also wait more than a year to file his suit. To accept the Commission's argument that the claim for contribution or indemnification arises when the injury is incurred would allow plaintiff to choose which defendant would bear the burden by simply filing his lawsuit after the one year statute of limitations has run. The defendant joint tort feasor, having no prior knowledge of a claim, would be unable to file a claim prior to being joined in the lawsuit.

*Waldinger Co. v. P & Z Co., Inc., supra* at 60.

The reasoning in *McDermott*, *Hanscome*, and *City of Clayton* is consistent with Nebraska law. If we were to adopt the opposite position, a party who might have a claim for indemnification would have to bring his action before the underlying claim was brought to avoid the running of the statute of limitations. Therefore, we hold § 2-725 does not apply where a party is seeking indemnification.

The present case is a classic example of the inequity which would result from adopting the theory advanced by Hormel. Geer-Melkus could not have brought their cause of action for

indemnity until the original suit was brought by Wood River on July 6, 1981. The statute of limitations on the indemnity action would have expired on December 14, 1980. Geer-Melkus would be left with no recourse under these circumstances.

It is generally recognized that the party seeking indemnification must have been free of any wrongdoing, and its liability is vicariously imposed. Therefore, it should recover from another. See, *Danny's Const. Co., Inc. v. Havens Steel Co.*, 437 F. Supp. 91 (D. Neb. 1977); *Barber-Greene Company v. Bruning Company*, 357 F.2d 31 (8th Cir. 1966); *Farmers Elevator Mut. Ins. Co. v. American Mut. Lia. Ins. Co.*, 185 Neb. 4, 173 N.W.2d 378 (1969). In this case, the product was manufactured and sold by Hormel. The evidence in the record indicates any problems with the product were directly attributable to Hormel, not to Geer-Melkus.

The trial court found that the statute of limitations question was resolved by *Grand Island School Dist. #2 v. Celotex Corp.*, 203 Neb. 559, 279 N.W.2d 603 (1979). This action was to recover damages arising from a leaky roof installed upon a junior high school. The school district sued the general contractor, the architect, the subcontractors, and various and sundry bonding companies. One of the defendants was dismissed on a demurrer and the others on motions for summary judgment, on the basis that the various statutes of limitations had run. Because none of the defendants were liable, there was no issue of indemnity.

Geer-Melkus asserts the proper statute governing limitation of this action is Neb. Rev. Sat. § 25-224 (Reissue 1985). In the event § 25-224 were deemed applicable, subsection (3) removes the limitation on indemnity claims. We therefore need not address the question of whether the third-party complaint comes within § 25-224.

For the foregoing reasons, we find the statute of limitations does not bar the third-party complaint brought by Geer-Melkus.

## CONCLUSION

The trial court's findings that the pleadings and evidence establish that Geer-Melkus Construction Company, Inc., and

United States Fidelity & Guarantee Company's claim was for a breach of warranty and not for a claim of indemnification and that the claim was barred by the statute of limitations, § 2-725, are reversed. As noted above, the uncontroverted evidence establishes that the loss was directly attributable to Hormel. The action is therefore remanded with instruction to enter judgment against Hormel.

REVERSED AND REMANDED WITH DIRECTION.