Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/19/2019 09:05 AM CDT

BRADY KEITH, ON BEHALF OF HIMSELF AND ALL
OTHERS SIMILARLY SITUATED, APPELLANT, V.
DATA ENTERPRISES, INC., APPELLEE.
___ N.W.2d ___

Filed March 19, 2019.    No. A-17-654.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a
   motion to dismiss is reviewed de novo.
2. \_\_\_\_: \_\_\_\_. When reviewing an order dismissing a complaint, the appel-
   late court accepts as true all facts which are well pled and the proper and
   reasonable inferences of law and fact which may be drawn therefrom,
   but not the plaintiff's conclusions.
3. **Limitations of Actions: Pleadings.** A challenge that a pleading is
   barred by the statute of limitations is a challenge that the pleading fails
   to allege sufficient facts to constitute a claim upon which relief can
   be granted.
4. **Motions to Dismiss: Pleadings.** To prevail against a motion to dis-
   miss for failure to state a claim, a plaintiff must allege sufficient facts,
   accepted as true, to state a claim to relief that is plausible on its face.
5. **Limitations of Actions: Pleadings.** If a complaint on its face shows that
   the cause of action is time barred, the plaintiff must allege facts to avoid
   the bar of the statute of limitations.
6. **Limitations of Actions: Contracts.** Generally, there is a 5-year statute
   of limitations on a written contract.
7. \_\_\_\_: \_\_\_\_. An action on an oral contract can only be brought within
   4 years.
8. **Actions: Contracts: Time: Damages.** A cause of action in contract
   accrues at the time of breach or the failure to do the thing agreed to.
   This is so even though the nature and extent of damages may not
   be known.
9. **Limitations of Actions: Negligence.** The statute of limitations for neg-
   ligence and negligent misrepresentation is 4 years.
10. **Limitations of Actions: Negligence: Torts.** In a negligence action, it
    has generally been stated that a statute of limitations begins to run as

soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs.

11. **Federal Acts: Contribution.** Where a third-party complaint seeks indemnification or contribution for violation of a federal statute, federal law applies.

12. **Federal Acts: Contribution: Liability.** A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law.

13. **Federal Acts: Contribution.** The Fair Credit Reporting Act does not contain any language expressly providing for contribution or indemnity.

14. **Federal Acts: Intent: Appeal and Error.** In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, an appellate court's task is one of statutory construction. The ultimate question in cases such as this is whether Congress intended to create the private remedy that the plaintiff seeks to invoke. Factors relevant to this inquiry are the language of the statute itself, its legislative history, the underlying purpose and structure of the statutory scheme, and the likelihood that Congress intended to supersede or to supplement existing state remedies.

15. **Federal Acts.** The Fair Credit Reporting Act has not been found to support an implied right to indemnity.

16. **Courts.** The U.S. Supreme Court has recognized the need and authority in some limited areas to formulate what has come to be known as federal common law. These instances are few and restricted, and fall into essentially two categories: those in which a federal rule of decision is necessary to protect uniquely federal interests and those in which Congress has given the courts the power to develop substantive law.

17. ____. Absent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of states or our relations with foreign nations, and admiralty cases.

18. **Courts: Contribution.** The only federal interest in contribution or indemnification is the vindication of federal statutory rights, but because that interest does not involve the duties of the federal government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority, it is insufficient to ground a federal common law cause of action.

19. **Judgments: Appeal and Error.** If a trial court arrives at the correct result even though it uses a reason different from that expressed by an appellate court, its judgment will still be upheld.
20. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the District Court for Lancaster County: ANDREW R. JACOBSEN, Judge. Affirmed.

Joshua C. Dickinson, of Spencer Fane, L.L.P., for appellant.

Colin A. Mues and Emily R. Motto, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

RIEDMANN, BISHOP, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Brady Keith appeals from the decision of the district court for Lancaster County which granted the motion to dismiss of Data Enterprises, Inc., for failure to state a claim upon which relief could be granted. We affirm.

## II. BACKGROUND

### 1. BASIS OF CASE

This case arose from the printing of credit and debit card expiration dates on the printed receipts issued to customers of a Lincoln, Nebraska, restaurant. Showing the expiration date on the receipt was a violation of federal law. The Fair and Accurate Credit Transactions Act of 2003 (FACTA), Pub. L. No. 108-159, 117 Stat. 1952, is an act to amend the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 et seq. (2012), "to prevent identity theft, improve resolution of consumer disputes, improve the accuracy of consumer records, make improvements in the use of, and consumer access to, credit information, and for other purposes." As relevant here, § 113 of FACTA amended 15 U.S.C. § 1681c of FCRA by adding subsection (g). Thus, 15 U.S.C. § 1681c(g) states in part:

**(g) Truncation of credit card and debit card numbers**
**(1) In general**

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(Emphasis in original.)

## 2. FACTUAL BACKGROUND

Because this appeal arises from the district court's order granting a motion to dismiss for failure to state a claim, the facts considered are those alleged in Keith's complaint.

Back Yard Burgers of Nebraska, Inc. (BYBN), owned and operated several food retail locations in several cities in Nebraska, including one on Andermatt Drive in Lincoln.

Data Enterprises is a Tennessee corporation engaged in the business of providing services and equipment for the processing of credit and debit card transactions. Data Cash Register Co. is the predecessor to Data Enterprises. (Data Enterprises will be referred to hereinafter as "DCR," as it was prior to this appeal and in the parties' briefs on appeal.)

Because BYBN lacked the expertise to process credit and debit card transactions, it entered into an agreement with DCR, whereby DCR agreed to process credit card transactions for BYBN and to issue receipts for such transactions. DCR was "fully and solely responsible for establishing a system at BYBN's retail location" to process credit or debit card transactions and to issue receipts for such transactions in compliance with state and federal law.

DCR first installed systems to process credit or debit card transactions at BYBN's locations in June 2005. Thereafter, BYBN entered into yearly support agreements with DCR whereby DCR agreed to provide support and maintenance for the systems installed by DCR. The yearly support agreements were in effect from August 15 of a given year until August 14

of the following year. BYBN entered into yearly support agreements with DCR every year starting on August 15, 2007, until August 15, 2010. Thus, DCR was required to provide support and maintenance to BYBN from August 15, 2007, until August 14, 2011.

The support and maintenance under the yearly support agreements was provided by Merchant Link, a third party, but BYBN contracted with DCR and made all payments to DCR, not to Merchant Link. Merchant Link acted on behalf of DCR in providing support under the yearly support agreements.

Between August 15, 2007, and August 14, 2011, Keith, "and thousands of other customers, used a debit or credit card to make purchases" at BYBN's Andermatt location. In each purchase that occurred between those dates, customers were given a DCR-generated cash register receipt displaying the expiration date of the customer's card.

### 3. Procedural Background

#### (a) Federal Action

On May 25, 2011, Keith filed his "First Amended Complaint" against BYBN in the U.S. District Court for the District of Nebraska, "See Case 8:11-CV-00135, Doc. 15." The federal complaint alleged that BYBN violated FACTA by issuing receipts displaying the last four digits of customers' credit and debit cards, as well as the expiration date for those cards. The federal complaint also sought to certify a "Class" composed of "'all persons who used either a Visa or MasterCard debit or credit card, or American Express credit card at the Andermatt Location, where BYBN provided an electronically printed receipt at the point of sale or transaction that displayed the expiration date of that person's credit or debit card . . . .'"

BYBN sent a demand letter to DCR on July 1, 2011, claiming that DCR was required to indemnify BYBN for any liability attributable to BYBN due to DCR's failure to comply with FACTA, "'and urging DCR to participate in the negotiations

between BYBN and [Keith].'" DCR sent a responsive letter on July 15 denying liability to BYBN and refusing to participate in negotiations. (There is no allegation that any attempt was made to bring DCR in as a party in the federal lawsuit.)

On July 1, 2014, Keith, "on behalf of thousands of customers that were certified as a Class," entered into a settlement agreement with BYBN. In the settlement agreement, BYBN agreed to the "'entry of a Consent Judgment'" against them and in favor of Keith on behalf of the "'Class'" in the amount of $2,792,400. The settlement agreement states, in part:

"BYBN agrees to fully and unconditionally quitclaim assign to [Keith] any claim it may have against [DCR] based on or arising out of [Keith's] and the Class members' claims against BYBN, including but not limited to any claims it may have for contribution, indemnity, fraud, negligence, breach of contract, any statutory claims under federal, state or local law, and any other claims related in any way to BYBN's violations of FACTA as alleged by [Keith] in this matter."

And Keith agreed that "'as a precondition to any efforts to collect any monies from BYBN under this Agreement, [Keith] shall first exhaust any and all reasonable efforts to collect the judgment against DCR.'"

The settlement agreement, which "was the result of extensive negotiations between [Keith's] counsel, on behalf of the Class, and BYBN" and "involved a neutral mediator," was "carefully . . . reviewed and approved by the United States District Court for the District of Nebraska"; final approval was given on February 20, 2015.

### (b) Current Action

On August 31, 2016, Keith, "[o]n behalf of himself and all others similarly situated," filed a complaint against DCR in the district court for Lancaster County. The complaint states the action was brought "to enforce a judgment assigned to [Keith] by [BYBN], meant to redress DCR's wrongful disclosure

of [Keith's] personal financial information." The complaint alleged breach of contract (count I), breach of contract (acts of Merchant Link as agent for DCR) (count II), negligence (count III), indemnity (count IV), negligent misrepresentation (count V), and violation of Nebraska's Uniform Deceptive Trade Practices Act (UDTPA) (count VI). In each count, Keith prayed for judgment against DCR "in the amount of the Consent Judgment, $2,792,400, plus pre-judgment interest, post-judgment interest, for its costs incurred herein, including reasonable attorneys' fees," and for such other relief as the court deemed just and proper.

On November 4, 2016, DCR filed a motion to dismiss each of Keith's claims pursuant to Neb. Ct. R. Pldg. § 6-1112(b)(6), for failure to state a claim upon which relief can be granted. DCR specifically alleged that Keith's claims for breach of contract, breach of contract (acts of Merchant Link as agent for DCR), negligence, negligent misrepresentation, and violation of UDTPA were all barred by the applicable statute of limitations. DCR further alleged that as to all claims, "the purported class action does not meet the commonality requirement or show that [Keith] can satisfy any judgment on behalf of the class."

A hearing on the motion to dismiss was held in January 2017. The district court subsequently filed its "Order of Dismissal" on May 24. In its order, the district court found that Keith's claims for breach of contract, breach of contract (acts of Merchant Link as agent for DCR), negligence, negligent misrepresentation, and violation of UDTPA were all barred by the applicable statute of limitations. The court further found that based on the allegations, the settlement, equitable principles, and principles of law, Keith's claim for indemnification failed to state a claim upon which relief could be granted, and that such failure could not be cured by amendment. Finally, the court found the complaint failed to state a claim on behalf of a class. The court dismissed the complaint with prejudice.

Keith appeals.

### III. ASSIGNMENTS OF ERROR

Keith assigns that the district court erred in (1) "determining that there was no genuine issue of material fact despite [Keith's] well-pleaded facts regarding indemnity in each claim causing the court to find that the statute of limitations ran at an earlier, dispositive date" and (2) denying his "overall indemnity claim by making a greater factual determination regarding the parties' relationship that went well beyond a court's role in a motion to dismiss."

### IV. STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo. *Tryon v. City of North Platte*, 295 Neb. 706, 890 N.W.2d 784 (2017). When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusions. *Id*.

### V. ANALYSIS

#### 1. STATUTE OF LIMITATIONS

Keith claims that the district court erred in determining that the statute of limitations had run on counts I, II, III, and V. He does not challenge the district court's determination that count VI (violation of UDTPA) was time barred.

[3-5] DCR raised the statute of limitations issue within its motion to dismiss pursuant to § 6-1112(b)(6) of Nebraska's pleading rules. A challenge that a pleading is barred by the statute of limitations is a challenge that the pleading fails to allege sufficient facts to constitute a claim upon which relief can be granted. *Anthony K. v. Nebraska Dept. of Health & Human Servs.*, 289 Neb. 540, 855 N.W.2d 788 (2014). To prevail against a motion to dismiss for failure to state a claim, a plaintiff must allege sufficient facts, accepted as true, to state a claim to relief that is plausible on its face. *Id*. As such, if a complaint on its face shows that the cause of action is time

barred, the plaintiff must allege facts to avoid the bar of the statute of limitations. *Id*.

### (a) Breach of Contract—Counts I and II

In count I of his complaint, Keith alleged that DCR breached its contract with BYBN

> for installation of the point of sale system by failing to program the point of sale terminals so that BYBN was not in violation of any federal, state or local law, including that any customer receipt would mask the expiration dates for credit and debit card receipts in order to not violate FACTA.

His complaint alleged that DCR first installed systems to process credit or debit card transactions in June 2005.

In count II of his complaint, Keith alleged that DCR breached the yearly support agreements with BYBN by failing to provide the compliance service offered by Merchant Link (as agent of DCR), which resulted in FACTA violations. His complaint alleged that the FACTA violations occurred between August 15, 2007, and August 14, 2011.

[6-8] Generally, there is a 5-year statute of limitations on a written contract. See Neb. Rev. Stat. § 25-205(1) (Reissue 2016). An action on an oral contract can only be brought within 4 years. See Neb. Rev. Stat. § 25-206 (Reissue 2016). A cause of action in contract accrues at the time of breach or the failure to do the thing agreed to. *Irving F. Jensen Co. v. State*, 272 Neb. 162, 719 N.W.2d 716 (2006). This is so even though the nature and extent of damages may not be known. *Id*.

The district court found that based on the allegations in the complaint, the latest point a breach of contract could have occurred was on August 14, 2011, which means that the 5-year statute of limitations would have run on August 14, 2016. Keith did not file his complaint against DCR until August 31, which was more than 5 years after any alleged breach. The district court noted that the complaint did not include any allegations that the applicable statute of limitations should be tolled. Accordingly, the district court found that counts I and II

were time barred by § 25-205 and failed to state a claim upon which relief could be granted.

(b) Negligence and Negligent
Misrepresentation—Counts III and V

In count III of his complaint, Keith alleged that DCR was negligent when it installed the point-of-sale systems for BYBN, which resulted in "the issuance of customer receipts for debit and/or credit card transactions" that were in violation of FACTA. He also alleged that DCR was negligent when it provided deficient support through Merchant Link that resulted in "the issuance of customer receipts for debit and/or credit card transactions" that were in violation of FACTA. And as noted previously, his complaint alleged that DCR first installed systems to process credit or debit card transactions in June 2005 and that the FACTA violations occurred between August 15, 2007, and August 14, 2011.

In count V of his complaint, Keith alleged that DCR negligently misrepresented to BYBN that DCR possessed the knowledge and expertise to install point-of-sale systems for the processing of credit and debit card transactions that would ensure compliance with state and federal laws. Keith further alleged that DCR negligently misrepresented to BYBN that DCR and Merchant Link, its agent, possessed the knowledge and expertise to provide support maintenance that would ensure compliance with state and federal laws. Keith alleged DCR's representations were not true because DCR's installation of the point-of-sale systems and subsequent support maintenance of the systems did not result in compliance with FACTA. Again, his complaint alleged that DCR first installed systems to process credit or debit card transactions in June 2005 and that the FACTA violations occurred between August 15, 2007, and August 14, 2011.

[9,10] The statute of limitations for negligence and negligent misrepresentation is 4 years. See Neb. Rev. Stat. § 25-207(3) (Reissue 2016). In a negligence action, it has generally been stated that a statute of limitations begins to run as soon as the

cause of action accrues, and an action in tort accrues as soon as the act or omission occurs. *Shlien v. Board of Regents*, 263 Neb. 465, 640 N.W.2d 643 (2002).

The district court found that based on the allegations in the complaint, the latest point in which negligence by DCR could have occurred was on August 14, 2011, which means that the 4-year statute of limitations would have run on August 14, 2015. Keith did not file his complaint against DCR until August 31, 2016, which was more than 4 years after any alleged negligence. The district court noted that the complaint did not include any allegations that the applicable statute of limitations should be tolled. Accordingly, the district court found that counts III and V were time barred by § 25-207 and failed to state a claim upon which relief could be granted.

#### (c) Counts I, II, III, and V
#### Barred by Statute of Limitations

We agree with the district court that counts I, II, III, and V are barred by their applicable statute of limitations. Keith acknowledges that "the [district] court was correct in its determination of the length of the statute of limitations for breach of contract and tort claims in Counts I, II, III and V," but contends that the district court "did not take into consideration the basis of these Counts are indemnification claims, which control when the statute runs." Brief for appellant at 3. And "'Nebraska has long held that a claim for indemnity accrues at the time the indemnity claimant suffers loss or damage.'" *Id*. at 4 (quoting *Dutton-Lainson Co. v. Continental Ins. Co.*, 271 Neb. 810, 716 N.W.2d 87 (2006)). "The statute of limitations for indemnification claims is extended since indemnity claims are an 'inchoate right which do not arise until one tort feasor has paid more than his share of the damages or judgment.'" Brief for appellant at 4 (quoting *City of Wood River v. Geer-Melkus Constr. Co.*, 233 Neb. 179, 444 N.W.2d 305 (1989)).

Although the holding in *City of Wood River* supports a claim for indemnification filed after the applicable statute of

limitations for the underlying claim, it does not support the preservation of the separate claims alleged here. In *City of Wood River*, the city brought a breach of contract action against the contractor of a wastewater treatment facility after the facility's aeration system broke down and could not be repaired. The contractor filed a third-party complaint against the manufacturer and supplier of an aeration system for the facility. The district court found that the third-party complaint was barred by the statute of limitations. On appeal, the Nebraska Supreme Court said that before it could determine whether the statute of limitations barred the contractor's third-party claim, the court needed to determine whether the contractor sought damages on a breach of warranty or sought indemnification. It determined that even though the third-party claim did not specifically ask for indemnity, and instead asked for damages for breach of warranty, it was evident from the pleading that if the contractor suffered damages because of the manufacturer's failure to fulfill its contractual obligation, it would look to the manufacturer for payment of their loss; thus, the third-party complaint raised an indemnification cause of action. The Supreme Court noted, "A duty to indemnify will always arise out of another more basic obligation whether it arises on contract or tort." *Id*. at 184, 444 N.W.2d at 309.

Keith cannot save any separate causes of action for contract and tort against DCR by trying to retitle them as indemnity claims; the district court properly concluded that these claims were barred by the statute of limitations. However, Keith pled a separate count of indemnity, and his indemnity claim will be addressed in its own right. Notably, the district court did not find that Keith's indemnity claim was time barred.

### 2. Indemnification—Count IV

In count IV of his complaint, specifically referred to as "indemnity," Keith alleged in relevant part:

> 83. Under the terms of the Consent Judgment, BYBN is legally obligated to pay damages to the Class in the amount of $2,792,400.

84. DCR's breach of contract, negligent and/or reckless acts by itself and through its agent Merchant Link were the cause of BYBN's FACTA violations because DCR agreed to assure FACTA compliant receipts for transactions between BYBN and its customers both in installing the point of sale system and through the Yearly Support Agreements.

85. BYBN was unaware that it was not in compliance with FACTA because it relied on the assurance of DCR and DCR's agent.

86. DCR owes a legal duty to indemnify BYBN for any violations of state or federal law.

87. DCR's failure to indemnify BYBN would be unjust.

Keith contends he "alleged two separate bases in Count IV for DCR's duty to indemnify BYBN under Nebraska law: (1) that DCR had an implied contractual duty to indemnify BYBN under its Yearly Support Agreement with BYBN, and (2) DCR had an implied-at-law duty to indemnify BYBN." Brief for appellant at 5. For various reasons, the district court found that Keith failed to state a claim for indemnity upon which relief could be granted.

We need not address the parties' arguments or the district court's analysis on indemnity, because such arguments and analysis were based on state law remedies, and we find that federal law is applicable and dispositive. Although not raised by the parties or by the district court, we conclude federal law does not provide Keith, standing in the place of BYBN, a right of indemnity against DCR under FACTA.

[11,12] Where a third-party complaint seeks indemnification or contribution for violation of a federal statute, federal law applies. *McMillan v. Equifax Credit Information Services*, 153 F. Supp. 2d 129 (D. Conn. 2001). "A defendant held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law."

*Doherty v. Wireless Broad. Sys. of Sacramento*, 151 F.3d 1129, 1130-31 (9th Cir. 1998). See, also, *Green v. United States Dept. of Labor*, 775 F.2d 964, 971 (8th Cir. 1985) ("a defendant held liable under a federal statute has no standing to sue others who have also violated the statute unless (1) the federal statute expressly or implicitly provides for such an action, (2) Congress empowered federal courts to develop substantive law under the statute, or (3) a right of contribution or indemnity is necessary to protect a uniquely federal interest").

[13,14] "FCRA [does not] contain any language expressly providing for contribution or indemnity." *McSherry v. Capital One FSB*, 236 F.R.D. 516, 520 (W.D. Wash. 2006). See, also, *In re Ameriquest Mortgage Co. v. Mortg. Lending*, 589 F. Supp. 2d 987, 993 (N.D. Ill. 2008) ("[l]ike FCRA, TILA [Truth in Lending Act] does not expressly authorize Ameriquest to seek indemnification or contribution from Third-Party Defendants"). Thus, the next question is whether Congress implicitly created a right to indemnification in FCRA cases. "In determining whether a federal statute that does not expressly provide for a particular private right of action nonetheless implicitly created that right, our task is one of statutory construction." *Northwest Airlines, Inc. v. Transport Workers*, 451 U.S. 77, 91, 101 S. Ct. 1571, 67 L. Ed. 2d 750 (1981). The ultimate question in cases such as this is whether Congress intended to create the private remedy that the plaintiff seeks to invoke. *Id*. Factors relevant to this inquiry are the language of the statute itself (e.g., does the language of the statute indicate it was enacted for the special benefit of a class of which petitioner is a member); its legislative history; the underlying purpose and structure of the statutory scheme (comprehensive character of the remedial scheme expressly fashioned by Congress strongly evidences an intent not to authorize additional remedies); and the likelihood that Congress intended to supersede or to supplement existing state remedies. See *id*.

[15] FCRA has not been found to support an implied right to indemnity. See *Conner v. Howe*, 344 F. Supp. 2d 1164, 1171

(S.D. Ind. 2004) ("neither the FDCPA [Fair Debt Collection Practices Act] nor its sister act, [FCRA], has been found to support an express or implied right to indemnity or contribution"). Congress' intent in enacting FCRA was to protect consumers. *McSherry v. Capital One FSB, supra*. And as relevant to the case before us, § 113 of FACTA amended 15 U.S.C. § 1681c of FCRA by adding subsection (g) to help prevent identity theft of credit and debit cardholders by requiring the truncation of credit and debit card numbers and the elimination of the card's expiration date on electronically printed receipts provided at the point of the sale or transaction; thus, it is clear it was enacted to protect cardholders. BYBN is not the cardholder here; rather, BYBN, the party seeking indemnification (remembering that Keith has stepped into the shoes of BYBN), is a member of the class of entities whose behaviors Congress sought to regulate to protect cardholders. Therefore, it cannot be said that BYBN is a member of the class for whose benefit FACTA was enacted. See, generally, *McSherry v. Capital One FSB, supra*. Courts have also held that indemnity actions are not appropriate under FCRA because the comprehensive statutory scheme provided by FCRA demonstrates that Congress did not intend to provide an indemnification remedy. See *McSherry v. Capital One FSB, supra*.

[16,17] Because Congress neither expressly nor implicitly intended to create a right to indemnification, if any right to indemnification exists, its source must be federal common law.

> There is, of course, "no federal general common law." . . . Nevertheless, the Court has recognized the need and authority in some limited areas to formulate what has come to be known as "federal common law." . . . These instances are "few and restricted," . . . and fall into essentially two categories: those in which a federal rule of decision is "necessary to protect uniquely federal interests," . . . and those in which Congress has given the courts the power to develop substantive law . . . .

*Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 640, 101 S. Ct. 2061, 68 L. Ed. 2d 500 (1981) (citations omitted) (antitrust laws case involving rights of contribution).

> [A]bsent some congressional authorization to formulate substantive rules of decision, federal common law exists only in such narrow areas as those concerned with the rights and obligations of the United States, interstate and international disputes implicating the conflicting rights of States or our relations with foreign nations, and admiralty cases.

*Id.*, 451 U.S. at 641.

> Admittedly, there is a federal interest in the sense that vindication of rights arising out of these congressional enactments [of antitrust laws] supplements federal enforcement and fulfills the objects of the statutory scheme. Notwithstanding that nexus, contribution among antitrust wrongdoers does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority. . . . In short, contribution does not implicate "uniquely federal interests" of the kind that oblige courts to formulate federal common law.

*Id.*, 451 U.S. at 642.

[18] The reasoning of *Texas Industries, Inc. v. Radcliff Materials, Inc., supra*, also applies to indemnification. See *Meyers v. Freedom Credit Union*, No. CIV.A. 05-3526, 2007 WL 2753172 at *8 (E.D. Pa. Sept. 21, 2007) ("[m]uch as in *Texas Industries,* the only federal interest in contribution or indemnification is the vindication of federal statutory rights, but because that interest 'does not involve the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority,' it is insufficient to ground a federal common law cause of action. . . . Similarly, FCRA contains no delegation to the courts of the power to

create additional or supplementary liabilities"). See, also, *In re Ameriquest Mortgage Co. v. Mortg. Lending*, 589 F. Supp. 2d 987, 994, 994 n.11 (N.D. Ill. 2008) ("[a]s with FCRA, we find no such compelling reason to extend federal common law to allow a claim for equitable indemnity or contribution for alleged TILA violations" and "'[a]lthough the decision in *Texas Industries* only addressed the right of contribution, the legal framework established . . . has been extended to indemnification.' *Kudlicki v. MDMA, Inc.,* No. 05-2589, 2006 WL 1308617, at *3 (N.D.Ill. May 10, 2006)").

[19] In sum, Keith, standing in the place of BYBN, does not have a right to indemnification from DCR under FACTA because such right was neither expressly or implicitly created by Congress, nor was the right one of federal common law. Although our reasoning differs from that of the district court, we agree that Keith failed to state a claim for indemnity upon which relief could be granted. If a trial court arrives at the correct result even though it uses a reason different from that expressed by this court, its judgment will still be upheld. *Logan Ranch v. Farm Credit Bank*, 238 Neb. 814, 472 N.W.2d 704 (1991).

Although Keith, standing in the place of BYBN, did not have a right to indemnification from DCR, federal law does not prohibit a separate breach of contract claim or a separate tort claim, and Keith did in fact bring such claims against DCR. However, as discussed previously in this opinion, Keith did not file his separate contract and tort claims within the applicable statute of limitations.

## 3. Class Action

[20] Keith's final argument relates to the finding by the district court that the complaint failed to state a claim on behalf of a class. However, because we have already determined that Keith has failed to state a claim for relief as to all counts in his complaint, we need not determine whether Keith needed to plead this state court case as a class action. An appellate court

is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Weatherly v. Cochran*, 301 Neb. 426, 918 N.W.2d 868 (2018).

## VI. CONCLUSION

For the reasons stated above, we find that Keith has failed to state a claim upon which relief can be granted and we therefore affirm the district court's order dismissing Keith's complaint with prejudice.

Affirmed.